**ROBERT JOHNSON GRAIN COMPANY, Appellant,**

v.

**CHEMICAL INTERCHANGE COMPANY, Appellee.**

No. 76–1043.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1976.

Decided Sept. 7, 1976.

Rehearing En Banc Denied Oct. 15, 1976.

---

John M. Lee, Fillmore, Camp & Lee, Fort Worth, Tex., for appellant; Stuart M. Haw, Jr., Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., on brief.

Thomas C. Walsh, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for appellee; Robert M. Lucy and William F. Tracy II, St. Louis, Mo., on brief.

Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.*

HENLEY, Circuit Judge.

This is an appeal by Robert Johnson Grain Company, a Texas corporation and plaintiff below, from a summary judgment granted by the district court in favor of Chemical Interchange Company, a Missouri corporation and defendant below. Subject matter jurisdiction of the district court, which is established, was based on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332(a).

Plaintiff brought its action in the district court alleging in substance that in January, 1975 following certain negotiations which began in December, 1974, plaintiff orally agreed to sell to the defendant and the defendant orally agreed to buy from the plaintiff 15,000 short tons of anhydrous am-

* ALBERT G. SCHATZ, District Judge, District of Nebraska, sitting by designation.

monia, a widely used chemical fertilizer, at a price of $370.00 per ton. Plaintiff alleged that after the oral contract was made on January 6, 1975 it obligated itself to purchase an amount of ammonia sufficient to fulfill its contract with the defendant; that in February, 1975 the defendant agreed to reduce the agreement to writing but refused to do so and repudiated its obligation in toto.[1]

This suit was commenced in April, 1975 and plaintiff anticipated a defense based on the statute of frauds appearing as Article 2–201 of the Uniform Commercial Code which is in force in both Missouri and Texas.[2] Accordingly, the plaintiff alleged that by virtue of its reliance upon certain representations and statements made on behalf of the defendant, the defendant is estopped from relying on the statute as a defense. On that theory plaintiff sought damages for breach of the alleged contract in the sum of approximately $450,000.00. Alternatively, plaintiff alleged that should it be held that it is not entitled to recover on the contract, it is nevertheless entitled to recover on a theory of "promissory estoppel" the sum of not less than $300,000.00 as "reliance damages."

The defendant answered and denied liability. It denied that it had ever entered into a contract to purchase ammonia from the plaintiff, and asserted that if it did so contract, the contract was oral, and that enforcement of it is barred by the statute that has been mentioned. And the defendant denied that plaintiff is entitled to recover anything either for breach of contract or by way of "reliance damages."

As the case proceeded, the depositions of plaintiff's president, Robert Johnson, and of its manager, Charlie Robb, were taken and transcribed. Also taken and transcribed were the depositions of defendant's president, John S. Moore, Jr., and of defendant's vice president, W. O. Butler. In addition, the defendant propounded certain interrogatories to the plaintiff which were answered.

In due course the defendant moved for summary judgment under Fed.R.Civ.P. 56, and the motion was submitted to the district court on the pleadings, defendant's interrogatories and the answers thereto, the depositions that have been identified and exhibits to those depositions.

On November 19, 1975 the district court filed a very short memorandum opinion, denominated an "Order," granting the motion and entered a formal judgment dismissing in its entirety plaintiff's complaint as amended. This appeal followed.

While Rule 56 is a useful tool whereby needless trials may be avoided, nevertheless there are stringent limitations on its use. Recently, in *Percival v. General Motors Corp.,* 539 F.2d 1126 (8th Cir. No. 75–1879 July 21, 1976), we cited with approval the earlier Eighth Circuit decision in *Windsor v. Bethesda General Hospital,* 523 F.2d 891 (8th Cir. 1975), wherein we noted (523 F.2d at 893, n. 5) that summary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible cir-

1. The record reflects that during December, 1974 and January, 1975, and perhaps in early February, 1975, the price of anhydrous ammonia was around $350.00 per ton or somewhat higher. The alleged repudiation of the contract took place in St. Louis on February 11, 1975. Very shortly after that date the price of the product fell very sharply due to an oversupply on the market.

2. Mo.Rev.Stats. § 400.2–201. Texas Business & Commercial Code, Title I, § 2.201. As far as the statute of frauds is concerned, the Missouri and Texas versions of the Code are identical. With certain exceptions not here pertinent, Mo.

Rev.Stats. § 400.2–201(1) provides that a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless it is evidenced by a writing signed by the party to be bound or by his agent or broker. Section 400.2–201(2) provides that if the contract is between merchants, the statute is satisfied if it is confirmed within a reasonable time by a writing sufficient to bind the sender if the writing is received and the party receiving it has reason to know its contents unless that party objects to it in writing within ten days after its receipt.

cumstances. In passing upon a motion for summary judgment the court is required to view the facts in the light most favorable to the party opposing the motion and to give to that party the benefit of reasonable inferences to be drawn from underlying facts. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 153–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Percival v. General Motors Corp., supra.*

As to the instant case, the district court noted at the outset of its opinion that there is a dispute between the parties as to whether their rights are governed by the law of Missouri or by the law of Texas. However, the district court was of the opinion that it made no difference which body of law was applied since plaintiff was not entitled to recover under the law of either Missouri or Texas.

The district court seems to have accepted plaintiff's premise that on or about January 6, 1975 the parties entered into an oral contract for the sale and purchase of anhydrous ammonia in the quantity and at the price alleged by plaintiff, and that the defendant had repudiated the contract. But, the district court also found that enforcement of the contract was barred by the statute of frauds, and that there was no basis for finding that the defendant is estopped from pleading the bar of the statute. Taking implicit note of certain conflicts in the deposition testimony, the district court concluded that there was no "genuine" issue as to any material fact, and that the defendant was entitled to judgment.

In its opinion the district court does not appear to have differentiated between the claim of the plaintiff based on breach of an enforceable contract and its claim based on alleged "reliance damages."

■ Rule 56 does not require a district court to make findings of fact when dealing with a motion for summary judgment. However, when a motion for summary judgment is granted, findings and conclusions, including subsidiary ones, can be most helpful not only to the litigants but also to a reviewing court. *See* 9 Wright & Miller, Federal Practice & Procedure, § 2575, pp. 692–93, and 10 *Ibid.* § 2716, pp. 433–35.

The four individuals whose depositions were taken were all interested witnesses, and they all testified at some length. As might be expected, their testimony was unsatisfactory and conflicting in a number of respects. Even if the ambiguities and conflicts in the evidence are resolved favorably to the plaintiff, as the district court was required to resolve them, it must be confessed that plaintiff's case was a weak one.

Had the case been submitted to the district court for decision on the merits rather than on the defendant's motion, and with the burden of proof resting on the plaintiff, we think that the district court might permissibly have found either that there was never any contract between the parties, or that the minds of the parties never met on all of the essential terms of the agreement or that Messrs. Moore and Butler did not intentionally or otherwise mislead Messrs. Johnson and Robb, or that the latter in contracting to buy ammonia worth more than five million dollars did not actually rely on verbal assurances emanating from the defendant, including any assurance that the contract would be reduced to writing. On the basis of such findings, the propriety of dismissing the plaintiff's complaint would have been rather clear.

But, in order to grant a summary judgment in favor of the defendant the district court was required to resolve the conflicts in the testimony in favor of the plaintiff and to give to the plaintiff the benefit of all inferences reasonably to be drawn from the testimony. That is to say, the district court was required to view the evidence as establishing that there was an oral contract between the parties that would have been enforceable apart from the statute of frauds, that the promise of the defendant to purchase the ammonia was reasonably calculated to cause the plaintiff to go on the market and buy the product at prevailing prices at a cost in excess of five million dollars; and that the plaintiff in good faith reliance on the promise of the defendant in fact obligated itself to the extent indicated.

And the district court was also required to view the evidence as establishing that representatives of the defendant either expressly promised to reduce the oral contract to writing or led the plaintiff to believe that such action would be taken.

With the case so viewed, the ultimate legal question presented to the district court was not free from difficulty, and at this time we are not convinced that it was answered correctly although we do not hold that the district court was wrong.

■ In view of the conflicts in the testimony, and in view of the fact that upon a trial those conflicts might properly be resolved in favor of the defendant so that the legal question or questions in the case would emerge in simpler form, we think that it was improper for the district court to grant the motion.

■ To put it this way, we think that as a matter of judicial policy, if nothing else, a district court should not, in order to grant summary judgment, confront itself unnecessarily with a difficult or doubtful question of state law on a set of facts that may actually be nonexistent. Nor do we think that this court should decide the question when it may not survive a trial on the merits.

We conclude that summary judgment was improvidently granted, and that the case must be remanded for trial. The remand will not necessarily require the district court to conduct a full scale *ore tenus* trial. It is quite possible that the parties will agree that the case may be submitted entirely or in large measure on the evidentiary materials that have been assembled already. We express no opinion as to the merits of the factual and legal issues that have developed or that may be developed in connection with the remand.

Reversed and remanded for further proceedings not inconsistent with this opinion.