Michael MURPHY, Ron Seiter, Sammy Barnard, Gary Niswonger, similarly situated Plaintiffs, Appellants,

v.

MISSOURI DEP'T OF CORRECTIONS, et al.; Terry Morris—Superintendent; Jimmy Jones—Asst. Superintendent; K. Wilkerson; Sally Walls, Appellees.

No. 86–1155.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1986.

Decided March 19, 1987.

Rehearing and Rehearing En Banc Denied May 8, 1987.

Eric M. Schmitz, St. Louis, Mo., for appellants.

Kelly Mescher, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before McMILLIAN and ARNOLD, Circuit Judges, and ARNOLD,* District Judge.

McMILLIAN, Circuit Judge.

Appellants are inmates or former inmates at the Missouri Training Center for Men (MTCM or the prison) who are members of the Aryan Nations, Church of Jesus Christ Christian (Aryan Nations). Appellants brought this action under 42 U.S.C. § 1983 in two counts. Both counts were essentially the same and asked for similar relief. For this reason both counts were considered as one complaint. The action was brought against named officials of the Missouri Department of Corrections (the prison officials) claiming that the new mail policy at the prison and certain conduct of the prison officials had denied appellants access to and communication with Aryan Nations in violation of the first amendment and the due process clause of the fourteenth amendment. The United States Magistrate for the Eastern District of Missouri (the district court) [1] entered final judgment in favor of the prison officials. *Murphy v. Missouri Dep't of Corrections,* No. N84-38-C (E.D.Mo. Dec. 19, 1985)

---

* The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas, sitting by designation.

1. By consent of the parties, the case was heard without a jury by a United States Magistrate pursuant to 28 U.S.C. § 636(c)(3).

[Available on WESTLAW, DCTU database]. (memorandum order). This appeal followed.

For reversal, appellants argue the district court (1) entered judgment inconsistent with its factual findings, (2) should have made a specific factual finding that Aryan Nations is a religion entitled to constitutional protection, (3) erroneously held that appellants failed to state a claim based on the prison officials' failure to recognize Aryan Nations as a religious organization at the prison, (4) erroneously concluded that appellants' rights to free speech and the free exercise of religion were not unconstitutionally restricted by the prison's new mail policy, (5) erroneously concluded that appellants' rights to procedural due process were satisfied by the existence of a formal grievance procedure at the prison, and (6) failed to award attorney's fees to appellants as the prevailing parties in this civil rights action. For the reasons discussed below, we affirm in part, reverse in part and remand the case to the district court with instructions for entry of new judgment and for further proceedings in accordance with this opinion.

**Facts**

The essential facts of this case are not disputed. Before January 1984, inmates at MTCM were allowed to receive correspondence and literature from Aryan Nations [2] without special restriction. A new mail policy was instituted at MTCM in January 1984. Under the new mail policy, prison officials withheld delivery of literature or correspondence addressed to an inmate from any organization that espoused the supremacy, purity or separation of the white race. Prison officials responsible for reviewing inmate mail were specifically told to watch for Aryan Nations materials. Prison officials dispute the characterization of the new mail policy as a total ban on Aryan Nations materials. They admit, however, that since the new mail policy was instituted, no Aryan Nations materials have been allowed into MTCM. Prison officials testified that they believe literature espousing racial separation or white supremacy increases tension and racial unrest at the prison and that withholding delivery of these materials is necessary to ensure prison security.

It is the policy of the prison to give notice to an inmate each time delivery of a piece of mail addressed to him is withheld. The inmate may then file an institutional grievance to protest the decision. Appellants contend, however, that they were notified by prison officials only once, in early 1984, that delivery of Aryan Nations materials and correspondence would be withheld pursuant to the new mail policy. When shown the withheld mail, appellant Ron Seiter testified that most of the envelopes were still sealed, although the material clearly bore an Aryan Nations' return address. Appellants testified that they were not permitted to inspect the individual pieces of mail being withheld. Appellants claim that they orally protested the withholding decision at this time, but that their protest was rejected.

On December 27, 1983, appellant Michael Murphy requested a payment from his personal funds to have Aryan Nations books and taped sermons sent to him at the prison. He did not specify which materials in the organization's catalog of publications he intended to purchase. A prison official wrote "not approved" across Murphy's request. Murphy protested in writing, and the prison official responded in writing that the request for payment was refused by orders of the prison superintendent. The prison official stated, "it is in my authority under Missouri law. Case closed," and

2. Aryan Nations is an organization with the philosophical or religious belief that the white race is the chosen people of God and that racial integration is wrong or sinful. For the sake of brevity in this opinion, we will refer to the literature and correspondence affected by the prison policies and conduct challenged here as "Aryan Nations materials." Inmates at the prison have also corresponded with and received literature from other churches and political organizations that espouse similar theories of racial separation, white supremacy, or both, such as the Mountain Church, the Ku Klux Klan and the Euro-American Alliance. Our analysis of the constitutionality of restricting inmate access to Aryan Nations materials applies to the materials of these organizations as well.

gave Murphy no further explanation. A prison policy requires that when an inmate's request for personal funds is denied, notice and a statement of reasons are to be given.[3]

Appellants testified that in the spring of 1984 they talked to the MTCM superintendent about recognition of Aryan Nations as a religious organization at the prison. Members of recognized religious organizations have certain institutional privileges at MTCM, including the right to assemble and to meet with religious leaders, and access to certain prison funds. The MTCM superintendent recalled the conversation and said he "made it clear" to appellants at that time that he was "adamantly opposed" to recognizing Aryan Nations. Appellants never formally requested recognition of Aryan Nations as a religious organization at MTCM.

MTCM officials testified that they equate Aryan Nations with the Aryan Brotherhood, a violent prison gang, and that they believe there is some connection between Aryan Nations and the Aryan Brotherhood. They acknowledged, however, that they have no direct evidence that appellants are members of a gang or that appellants have been involved in racial violence while incarcerated at MTCM.

Appellants brought this civil rights action in September 1984, alleging that the new mail policy withholding delivery of Aryan Nations materials and the prison officials' refusal to recognize Aryan Nations as a religious organization at MTCM violated their first amendment rights to free speech and to the free exercise of religious belief. They also alleged the implementation of the new mail policy denied them procedural due process. They sought damages and declaratory and injunctive relief.[4]

### Analysis

The heart of appellants' argument on appeal is that the district court entered a judgment inconsistent with its factual findings. Appellants argue that even though the district court made factual findings in their favor on both first amendment and due process claims, and, in effect granted them injunctive relief, the district court inexplicably concluded that no constitutional violations had been established and entered judgment in favor of prison officials. This claim that the conclusions of law and judgment are inconsistent with the factual findings is inextricably linked with appellants' direct challenges in this appeal to the substance of the district court's conclusions of law. Our analysis of appellants' contentions must begin, therefore, with a careful review of the district court memorandum and order.

### Free Speech and Free Exercise of Religion

We will consider first appellants' claim that the new mail policy violates their first amendment rights to free speech and to the free exercise of religion. Appellants raise, as a preliminary issue, the claim that the district court should have made a specific factual finding that Aryan Nations is a religion meriting constitutional protection. This court has held that only sincere religious beliefs are protected by the first amendment. *Wiggins v. Sargent,* 753 F.2d 663, 666 (8th Cir.1985) (*Wiggins*). We have also recognized that a belief with political or secular aspects may be religious in nature. *Id.* at 667. We decline to hold in this case, however, that the district court erred in not making an explicit finding on this issue. The district court's analysis of the religious freedom claims raised indicates that it assumed the inmates' beliefs merited constitutional protection. Appellants have suffered no harm by the lack of

---

3. Murphy was transferred to the Missouri State Penitentiary (MSP) in May 1984. The superintendent at MSP, who establishes that institution's mail policies, was added as a defendant in this case in May 1985. In August 1985, Murphy received notice from MSP officials that delivery of a package addressed to him from Aryan Nations had been refused. A total ban on Aryan Nations material has not been imposed at MSP

because, while incarcerated there, Murphy did receive an Aryan Nations Bible study course.

4. The district court held that no constitutional violations had been established and entered judgment in favor of the prison officials. *Murphy v. Missouri Dep't of Corrections,* No. N84–38–C (E.D.Mo. Dec. 19, 1985).

a specific factual finding that Aryan Nations is a religion.

Prisoners retain first amendment rights while incarcerated, *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979), although exercise of these rights is limited by the fact of confinement and the needs of the penal institution. *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977). The United States Supreme Court has held that censorship of prisoner mail is constitutionally justified if (1) the policy or practice of censorship furthers an "important or substantial governmental interest unrelated to the suppression of expression," including prison security and order or rehabilitation, and (2) the limitation of free expression is "no greater than necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974) (*Procunier*). *Accord Wiggins,* 753 F.2d at 667 (prisoners have first amendment right to receive mail subject to restrictions necessary to protect prison security). A similar standard governs the constitutionality of restrictions on the free exercise of prisoners' religious beliefs. The need for a particular prison regulation limiting free exercise is to be balanced against the invasion of religious freedom the restriction entails. *Hill v. Blackwell,* 774 F.2d 338, 342 (8th Cir.1985) (*Hill*).

The district court found in the present case that the new mail policy operated as a total ban on Aryan Nations materials received by prisoners through the mail. Memorandum order at 22–25. Relying on language from our opinion in *Wiggins,* the district court concluded that a total ban was "too restrictive" a policy. *Id., citing Wiggins,* 753 F.2d at 668 (total ban on all religious literature would be overbroad). The district court went on to define for prison officials the proper scope of a mail

censorship policy, again relying on our decision in *Wiggins.* The district court ordered that only materials that advocate violent action to achieve white supremacy, that are racially inflammatory or that would create tension within the prison environment may be banned. *Id.* at 25, *citing Wiggins,* 753 F.2d at 668 (materials advocating violence may properly be excluded). In contradiction to these findings and legal analysis, however, the district court went on to hold that the new mail policy did not violate inmates' free speech and free exercise rights because the total ban on Aryan Nations materials was "conducted in furtherance of an important or substantial governmental interest ... [in] the security of the institution." *Id.* at 25.

We agree that prisoner access to Aryan Nations materials through the mails may be restricted by prison security needs. We also accept the district court's determination, based on its review of the challenged materials, that much of the excluded literature would create "a clear and present danger to security of the prison if released within the institution."[5] *Id.* at 23. We believe, however, that a total ban is too restrictive a mail censorship policy. The constitutional standard set out in *Procunier,* has two aspects. Censorship of inmate mail must not only be justified by a legitimate need for prison security, it must also be no more restrictive than necessary to protect prison security. 416 U.S. at 413, 94 S.Ct. at 1811.

It appears the district court believed MTCM officials had exaggerated their response to an otherwise legitimate concern for prison security by implementing an overbroad mail censorship policy. This is the only inference we can draw from the district court's order that the breadth of the new mail policy, as implemented, should be narrowed to conform to the standards previously approved as constitutional in *Procunier.* We cannot, however, recon-

---

5. The district court gave proper deference to the testimony of prison officials that racially derogatory or white supremacist literature would cause increased racial unrest and violence at MTCM. *See Procunier v. Martinez,* 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807–08, 40 L.Ed.2d 224 (1974) (expert judgment of prison officials that certain speech or religious practices threaten legitimate penological objective to be given deference).

cile this finding of overbreadth with the district court's subsequent holding that no constitutional violation had been established under the facts of the case.

■ Whether a regulation represents an exaggerated response to a legitimate security concern is a mixed question of fact and law. *Hill,* 774 F.2d at 343 (citation omitted). While the district court must find the facts that either support or undermine the constitutionality of the new mail policy and we will overturn these findings only if they are clearly erroneous, the ultimate conclusion as to the policy's constitutionality is a question of law that is subject to this court's plenary review. *Id.* The factual findings of the district court on these first amendment issues are not clearly erroneous. Based on these facts, we conclude, as did the district court in its analysis of this issue that, as a matter of law, the new mail policy fails the second prong of the *Procunier* standard. A total ban on Aryan Nations materials is more restrictive of prisoner first amendment rights than is necessary to maintain prison security. Restriction of inmate access to Aryan Nations materials through the mail must be limited to those materials that advocate violence or that are so racially inflammatory as to be reasonably likely to cause violence at the prison. We therefore hold that the new mail policy, as implemented, operated as a total ban, which violated prisoner rights to free speech and to the free exercise of religion. Appellants are entitled to judgment in their favor on these claims and to appropriate relief.

■ Appellants also argue that prison officials refused to allow Aryan Nations the institutional privileges of a recognized religious organization in violation of the free exercise clause. The district court concluded that this allegation failed to state a claim for relief because no inmate had made a formal request that Aryan Nations be recognized as a religious organization at the prison. Memorandum order at 25. Appellants contend that this ruling

amounts to the imposition of a requirement that they exhaust state administrative remedies before they may proceed on a § 1983 claim.[6] Prison officials argue that the analysis of the district court did not require inmates to exhaust state remedies. Rather, they argue the district court concluded that the nonrecognition claim was not yet ripe for consideration. Appellants respond that their claim is ripe for adjudication because any formal request to prison officials for recognition would have been futile in light of the testimony of the prison superintendent that he was "adamantly opposed" to recognizing Aryan Nations as a religious organization.

■ We agree that this nonrecognition claim is not yet ripe for judicial consideration. Only an actual deprivation of federal rights states a claim for § 1983 relief. *Wilson v. Robinson,* 668 F.2d 380, 384 (8th Cir.1981). While the prison may not unconstitutionally deny inmates the right to practice their religious beliefs, the prison may make reasonable rules governing recognition of religious organizations eligible for institutional privileges. The prison's requirement of a written request for formal recognition is a reasonable rule and we are not persuaded that it is a foregone conclusion that prison officials will deny such a request from Aryan Nations or treat the request differently than a similar request from other religious groups.

**Procedural Due Process**

We consider next the claim that appellants' rights to procedural due process were violated by the way the new mail policy was implemented. Appellants allege that they had no meaningful avenue through which to protest decisions to withhold delivery of specific pieces of mail, despite the existence of a grievance procedure at the prison. The Supreme Court has held that the decision to withhold delivery of a particular piece of mail to a prisoner must be accompanied by minimal procedural safeguards. *Procunier,* 416 U.S. at

---

6. There is no requirement that state administrative remedies be exhausted as a prerequisite to § 1983 relief. *E.g., Wilwording v. Swenson,* 404

U.S. 249, 251–52, 92 S.Ct. 407, 409–10, 30 L.Ed.2d 418 (1971).

417–19, 94 S.Ct. at 1814. An inmate whose mail is withheld must receive notice, an opportunity to be heard, and an opportunity for appeal to a prison official who was not involved in the original censorship decision. *Id.* at 418–19, 94 S.Ct. at 1814.

██ The district court found that in the present case prison officials did not provide inmates with notice or an opportunity to inspect censored literature on all occasions when a decision was made to withhold delivery of material under the new mail policy. Memorandum order at 11–12. The district court ordered that "to protect the inmates' procedural due process rights," prison officials were to implement what the district court termed "additional procedures." *Id.* at 25–26. The district court ordered prison officials to read and review each piece of literature or correspondence received by an inmate from Aryan Nations or a similar organization, to notify the inmate in writing when materials were withheld and, in each case, to state reasons for that decision. *Id.* at 24–25. Finally, the district court directed that inmate grievances regarding mail censorship decisions were to be considered by a prison official who was not involved in the original censorship decision. *Id.*

We agree with the district court that these procedural protections are mandated by *Procunier.* We cannot, however, reconcile the district court's finding that these procedures were not in fact followed in this case with its subsequent holding that merely because a constitutionally-adequate grievance procedure existed at the prison, procedural due process was satisfied. *Id.* at 25–26. We conclude to the contrary that the district court's factual finding and the additional procedures ordered indicate that a procedural due process violation had, in fact, been established. Prison officials argue that the "additional procedures" ordered by the district court were already in place at the prison. Even if constitutionally-adequate mail censorship procedures were already in place, this claim cannot be

reconciled with the finding that prison officials did not in fact follow such procedures in the present case. We therefore hold that appellants' rights to procedural due process, as established in *Procunier,* were violated by the way prison officials implemented the new mail policy. Appellants are entitled to judgment in their favor on this claim and to appropriate relief.

**Inconsistent Judgment**

As one analysis has shown, the judgment of the district court is inconsistent with its factual findings.[7] This is not merely a technical or procedural error in the circumstances of this case, but substantially harmed appellants in two ways. First, as the judgment now stands, appellants are the losing parties and cannot enforce the order of the district court directing prison officials to implement a constitutional mail policy. That order for what is, essentially, injunctive relief, is not supported by a corresponding judgment. Further, appellants have been effectively denied attorney's fees as prevailing parties in this civil rights action under 42 U.S.C. § 1988.

We therefore reverse the judgment in accordance with this opinion in favor of appellants on the first amendment and procedural due process claims.

**CONCLUSION**

In summary, we affirm the district court determination that appellants failed to state a claim under § 1983 for nonrecognition of Aryan Nations as a religious organization at MTCM and we hold the district court did not err in failing to expressly recognize Aryan Nations as a religion. We further hold that the new mail policy, which operated as a total ban on Aryan Nations material, violates inmates' rights to free speech and religious expression. We also hold that prison officials implemented the mail policy without following minimal standards of procedural due process. Consequently, in accordance with these holdings, we reverse in part the judgment entered by the district court on these issues and order the case remanded.

7. Following entry of judgment below, appellants moved for amended judgment, but the district court denied the motion without explanation.

On remand, the district court is directed to vacate the judgment previously entered and to enter a new judgment in favor of appellants on the free speech and free exercise claims and on the procedural due process claims regarding the mail policy. Further, the district court is directed to hold further proceedings to determine and order appropriate relief, which should include declaratory and injunctive relief, and may, if appropriate, include an award of compensatory and punitive damages. Finally, because we have ordered the district court to enter judgment in favor of appellants, they are entitled to attorney's fees as prevailing parties pursuant to 42 U.S.C. § 1988. Therefore, on remand, and after a hearing on the matter, the district court is directed to award appellants reasonable attorney's fees. Fees shall be awarded for the proceedings before the district court, and also for this appeal. *See* Eighth Circuit Rule 17(c). Judgment is affirmed in part, reversed in part and remanded with instructions.

