784 F.Supp. 685 (1992)
Everett COX, Plaintiff,
v.
Leah EMBLY, et al., Defendants.
No. 90-0238C(5).
United States District Court, E.D. Missouri, E.D.
February 13, 1992.
*686 Everett Cox, pro se.
W. Jill Wehmer, Nelson L. Mitten, Riezman & Blitz, St. Louis, Mo., for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
Pro se prisoner plaintiff, an inmate at the Farmington Correctional Center (FCC), filed this action against defendants pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants have deprived him of his First and Fourteenth Amendment rights by confiscating certain sexually explicit reading materials. This cause is before the Court on the defendants' motion for summary judgment. As of this date, plaintiff has failed to file a response.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant v. Associated Elec. Co-op. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-2511, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.
On February 9, 1989 defendant Ron Heien (a FCC caseworker) approved a "Green Sheet" (Request for Withdrawal of Inmate's Personal Funds) in the amount of $15.50 for plaintiff. Plaintiff used the money to purchase, through the mails, ten (10) sexually explicit books. See, Plaintiff's Complaint and Defendants' Motion for Summary Judgment for the title of the subject books (the titles are self-explanatory as to the subject matters of the books). When the books arrived on March 27, 1989, defendant Leah Embly (FCC's mailroom supervisor) opened the package and inspected the books to determine whether or not they were prohibited by *687 Procedure 1S13-1.1(III)(F)(1), as adopted by the Missouri Department of Corrections and Human Resources. See, Exhibit 2 attached to defendants' motion for summary judgment. Upon inspection of the books, Embly determined that seven (7) of the books promoted incest and sex acts in violation of state and/or federal law, as prohibited by Procedure 1S13-1.1(III)(H). Since she believed that these books were prohibited and threatened the security of the Institution, she impounded them pursuant to FCC Standard Operating Procedure 13-1.1(III)(G), pending review and disposition by the FCC Censorship Committee. See, Exhibit 5 attached to defendants' motion for summary judgment. The other three (3) books were given to the plaintiff.
On March 29, 1989 plaintiff received written notice that his other seven books had been confiscated and reviewed by the Censorship Committee. The Censorship Committee further notified plaintiff that these books would not be given to him because 1) they contained pornographic material with explicit sex acts, or sadistic or violent acts; 2) they contained information and/or pictures in violation of state and/or federal law; and 3) the subject matter related to incest. The Committee believed that the nature of these books threatened FCC's security. See, Exhibit 4  Censorship Committee Report regarding Everett Cox, attached to defendants' motion for summary judgment.
Upon receipt of the Committee's Report, plaintiff filed a grievance with the FCC's Institutional Head requesting the return of his seven books. See, Exhibit 8 attached to defendants' motion for summary judgment. Plaintiff's grievance was denied by the then Superintendent Denis Dowd. Plaintiff appealed the denial of his grievance to the Director of the Division of Adult Institutions, who affirmed Superintendent Dowd's decision. Plaintiff then appealed to the Citizen Review Committee, which affirmed all the prior rulings. Finally, Plaintiff appealed to the Director of the Missouri Department of Corrections and Human Resources (MDCHR), who affirmed all the prior ruling and denied plaintiff's grievance. Upon denial of his grievance by the Director of MDCHR, plaintiff had exhausted all of his available administrative remedies.
Defendant Embly forwarded the confiscated books to the Central Office of the MDCHR because plaintiff failed to notify her as to the disposition of these books, as required by FCC Procedure 13-1.1(III)(G)(2)(3). See, Embly's Affidavit, attached to defendants' motion for summary judgment. The books were received by the Central Office on September 14, 1989 and once again reviewed. On November 16, 1989 Mark S. Schreiber, Executive Assistant, Division of Adult Institutions, notified plaintiff that upon further examination of the seven books, two were being retained in the Central Office and the remaining five were being returned to plaintiff. The two books being retained were not being allowed in FCC because "they advocate acts which by Missouri Statutes are felonious in matter." See, Exhibit 6 attached to defendants' motion for summary judgment. Ultimately, plaintiff received eight of the ten books he had originally purchased.
The Court has reviewed the legal memorandum, exhibits, and affidavits submitted by the defendants in support of their motion for summary judgment. Defendants have met their initial burden to demonstrate that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). Once the defendants met their burden, the burden shifted to plaintiff to "set forth affirmative evidence, specific facts, showing that there [was] a genuine dispute on [those] issue[s]." City of Mt. Pleasant v. Associated Electric Co-op., 838 F.2d 268, 274 (8th Cir.1988). Since plaintiff failed to oppose defendants' motion and his complaint generally mirrors defendants' rendition of the facts, the Court accepts defendants' account of the facts and now will apply the relevant law.
Plaintiff contends that the First Amendment guarantees him the right to receive and read any materials he desires, and that his books were confiscated without due *688 process of law. Defendants contend that plaintiff's confiscated books advocated acts violative of state and federal law, were a threat to prison security, and were confiscated in adherence to prison regulations.
Prison officials have broad discretion to regulate the relations between prisoners and the outside world. Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989); Procunier v. Martinez, 416 U.S. 396, 404-405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); see also, Fallon v. Lockhart, 919 F.2d 1304, 1305 (8th Cir.1990) (McMillian, J., dissenting). Regulations, such as those present in this case, must be analyzed under the standards set forth by the Supreme Court in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The validity of these regulations turns on whether they are "reasonably related to legitimate penological interests." Thornburgh v. Abbott, 109 S.Ct. at 1876 quoting Turner v. Safley, 482 U.S. at 89, 107 S.Ct. at 2261.
The Court in Turner identified four factors relevant to the reasonableness inquiry. These factors are: 1) whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective; 2) whether there are alternative means of exercising the right that remain open to prison inmates; 3) the impact that accommodation of the asserted constitutional right will have on others (inmates and prison staff); and 4) the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. Thornburgh v. Abbott, 109 S.Ct. at 1882-1885; Turner, 482 U.S. at 89-90, 107 S.Ct. at 2261-2262.
The regulations at issue provide that "[a]ll incoming mail, with the exception of privileged mail, should be opened in the mailroom and ... read for content which may compromise the safety and security of inmates, staff, and/or the institution." MDCHR Procedure 1S13-1.1(III)(F)(1). MDCHR states that "[i]nmates shall not ... receive publications ... which promote violence, disorder or the violation of state or federal law or any pornographic material containing explicit sexual sadistic acts, or sex acts in violation of state or federal law."
The afore-mentioned regulations are intended to protect prisoner safety and prison security because such materials are considered to be inducements to violence. James Purkett, present Superintendent at FCC, attests to the fact that the prison system generally does not favor the promotion of illegal acts. He further attests that materials promoting incest and sexual abuse (especially directed at children) could lead to violence because they may be considered indicative of the reader's character. Many within the prison's general population are victims of incest or abuse, and do not look kindly upon anyone they consider to be pedophiles, homosexuals, or sexual abusers. Furthermore, such materials are passed around and if "in the wrong hands" could encourage assaults on the younger or weaker inmates. See, Exhibit 7  Purkett Affidavit, attached to defendants' motion for summary judgment. Confiscation of materials meeting the criteria of the prison's mail regulations is directly tied to the prison's goal of preventing violence in the institution.
The regulations are "neutral" in that they draw a distinction between publications solely on the basis of the potential for disruption of prison security. Thornburgh v. Abbott, 109 S.Ct. at 1883.
Although there are no alternative means for the plaintiff to read materials which violate state or federal law and which subject the prison population to the risk of violence, plaintiff still possesses the means to read sexually explicit materials. The regulations permit a broad range of publications to be sent, received, and read by the plaintiff. This is aptly demonstrated by the fact that out of ten books, he was allowed to keep eight. Although all ten books might be considered objectionable by a significant portion of the non-prison population, prison regulations were flexible enough to allow plaintiff access to eight of these books.
*689 The regulations restrict access to reading materials considered to be potentially detrimental to order and security within the FCC. As stated before, reading materials, especially sexual in nature, are passed around the prison. The "ripple effect" which was of great concern to the Turner Court is definitely present in the instant situation. Inmates who possess materials that advocate sexual abuse of children or incest risk assault from others; and some inmates who possess these reading materials are encouraged (by the subject matter) to assault other inmates who are younger or weaker. Obviously, any materials which impact negatively upon the maintenance of order and security within the prison risks the safety of the prison staff.
Finally, there does not appear any ready alternative to fully accommodate inmates' First Amendment rights to possess and read sexually explicit materials which advocate acts in violation of state and federal law and which are a threat to the security of the prison. The regulations are not an "exaggerated response" to the problem at hand and provide a reasonable compromise between the prison authorities' need to maintain order and security in the prison and the prisoners' First Amendment rights to possess and read sexually explicit materials.
The Court finds that the regulations promulgated by the prison authorities, in this case, are facially valid under the Turner standard. Plaintiff's First Amendment rights have not been violated.
Next, the Court considers whether plaintiff's procedural due process rights were violated by the application of the FCC's mail regulations. Plaintiff fails to allege any facts whatsoever to support his claim that his due process rights were violated. He simply asserts a generalized due process violation claim. Despite plaintiff's lack of affirmative evidence to support his claim, the Court will review the regulations and application of same in order to assess whether or not they violate the Due Process Clause.
Confiscation of any portion of an inmate's mail must be accompanied by minimal procedural safeguards. Procunier v. Martinez, 416 U.S. at 417-419, 94 S.Ct. at 1814; Murphy v. Missouri Dept. of Corrections, 814 F.2d 1252, 1257-58 (8th Cir. 1987). These procedural safeguards include notice to the inmate, an opportunity to be heard, and an opportunity for appeal to a prison official who was not involved in the original censorship decision. Procunier v. Martinez, 416 U.S. at 418-19, 94 S.Ct. at 1814; Murphy, 814 F.2d at 1258.
The regulations at issue provide for written notice to the inmate of the confiscation of any portion of his incoming mail, review by the Censorship Committee within five working days of receipt of the prisoner's mail, and a grievance procedure for the prisoner. All parties agree that plaintiff received written notice of the confiscation of his books and the reasons for the confiscation. Defendants' supporting materials clearly show that plaintiff was allowed and did file a grievance and three successive appeals to prison officials not involved in the original censorship decision. Plaintiff's right to procedural due process was not violated by the prison mail regulations or their implementation.
Since the Court has found that plaintiff's First Amendment and Fourteenth Amendment rights have not been violated, there is no reason for the Court to address defendants' assertion that plaintiff failed to state any facts which would demonstrate personal involvement on the part of defendants Heien and Greenlee in the violations alleged.
In accordance with the above findings, the Court determines that the defendants are entitled, as a matter of law, to summary judgment on all claims contained in plaintiff's complaint.