**Alvin WILSON, Plaintiff,**

v.

**Debbie HOLMAN, Defendant.**

No. 91–1106C(5).

United States District Court, E.D. Missouri, E.D.

June 24, 1992.

Alvin Wilson, Mineral Point, Mo., for plaintiff Wilson.

Susan D. Boresi, Riezman & Blitz, Clayton, Mo., for defendant Holman.

### MEMORANDUM

LIMBAUGH, District Judge.

Pro se prisoner plaintiff has filed an § 1983 action alleging that his First and Fourteenth Amendment rights have been violated because the defendant failed to deliver a personal letter to him on or about April 21, 1989. This cause is before the Court on the parties' cross-motions for summary judgment.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt.*

*Pleasant,* 838 F.2d at 273. After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

During the relevant time in question, plaintiff was incarcerated in Housing Unit 2 at the Potosi Correctional Center (PCC). Inmates confined in Housing Unit 2 (at that time) were inmates assigned to Administrative Segregation, Disciplinary Segregation, Protective Custody, or under investigation.

Defendant Holman[1] was employed as a mailroom clerk at PCC. Her responsibilities as mailroom clerk included inspecting both incoming and outgoing non-privileged mail for appropriate addresses, contraband, and correspondence in violation of prison rules. As a mailroom clerk, defendant was familiar with the housing assignments of the inmates at PCC. She was also familiar with the handwriting of a number of inmates. Affidavit of Debbie Holman Reed.

Prison policy prohibits written correspondence between inmates within the same institution. This regulation was promulgated primarily for security reasons. It is designed to preclude inmates from communicating escape plans, from conveying threats to other inmates, from coordinating prison gang activities, and from planning criminal activities. *See,* Exhibit B–1 Institutional Services Policy and Procedure 13–1.1 "Inmate Mail Procedures"; Exhibit B–2 PCC Standard Operating Procedure (SOP) 13–1.1 "Inmate Mail Procedures"; Exhibit B–3 Institutional Services Policy and Procedure 21–1.2 "Administrative Segregation".

In March and April of 1989, defendant Holman became aware of an ongoing investigation at PCC regarding inmate prostitution activity. The investigation involved inmates Rondell Williams (Housing Unit 6), Alvin Stone Wilson, Lamont Griffin (Housing Unit 2) and Glen Burrows. Defendant was familiar with the handwriting of Lamont Griffin, who often used the signature penname of "L.A." in his correspondence. Affidavit of Debbie Holman Reed.

In March 1989, defendant discovered a letter written to Rondell Williams which contained threats and references to inmate prostitution activities at PCC. The letter also provided Williams with the name and address of a third party (outside of the prison) with whom Williams could contact, in order to communicate with the writer of the letter. The name of the third-party was Jean Hollinshed (with an address in Kansas City, Mo.). The letter was signed "L.A." and defendant recognized the handwriting of Lamont Griffin. *See,* Exhibit A–1.

Subsequent to the discovery of the letter to Rondell Williams, defendant discovered a letter to Glen Burrows. This letter also contained threats and references to prostitution activities at PCC. Once again, defendant recognized the penmanship and the signature "L.A." as belonging to Lamont Griffin. *See,* Exhibit A–2.

Also in March 1989, defendant, while performing her duties as a mailroom clerk, inspected a letter from Lamont Griffin to

---

1. Defendant Holman legally changed her name to Debbie Reed in February 1992. Affidavit of Debbie Holman Reed. However, for the sake of consistency, the Court will refer to Ms. Reed pursuant to her former name of Holman.

Ms. Marguerette Hollinshed of Kansas City, Mo. In the letter, Griffin requests Ms. Hollinshed to write a letter to plaintiff for Griffin because it is against prison rules for Griffin to write to the plaintiff directly. Griffin instructs Ms. Hollinshed as to the contents of the letter she is to send the plaintiff. *See,* Exhibit A-3.

On or about April 21, 1992 defendant confiscated a letter to plaintiff from Ms. Hollinshed. The text of the letter was virtually identical to the communication relayed by Lamont Griffin to Ms. Hollinshed (to be put into a letter to plaintiff). This letter contained threats concerning other inmates and references to prostitution activities at PCC. *See,* Exhibit A-4. Defendant turned this letter over to George Cobb, the Institutional Investigator at this time. Defendant did not deliver the letter to plaintiff nor did she issue a confiscation notice to plaintiff. Plaintiff did not receive a code violation due to this letter.

There is no dispute that plaintiff received a letter from Ms. Hollinshed on or about April 21, 1989. There also is no dispute that defendant confiscated this letter, did not return it to the sender or give it to the plaintiff, nor issue plaintiff a confiscation notice. Plaintiff contends that there was no legitimate reason to confiscate the letter and that the defendant's failure to give his notice of the confiscation deprived him of his First Amendment and due process rights. Defendant contends that inspection of non-privileged mail does not violate a prisoner's constitutional rights and that notice of confiscation is not constitutionally necessary when the letter contains references to criminal activity, especially when the addressee and the purported criminal activity are the subject of a pending investigation.

■ Prison officials have broad discretion to regulate the relations between prisoners and the outside world. *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989); *Procunier v. Martinez,* 416 U.S. 396, 404–405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *see also, Fallon v. Lockhart,* 919 F.2d 1304, 1305 (8th Cir.1990) (McMillian, J., dissenting).

Regulations, such as those present in this case, must by analyzed under the standards set forth by the Supreme Court in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The validity of these regulations turns on whether they are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott,* 109 S.Ct. at 1876 quoting *Turner v. Safley,* 482 U.S. at 89, 107 S.Ct. at 2261.

Plaintiff does not dispute that the letter sent to him by Ms. Hollinshed contained threats and references to prostitution activities in the prison. He does not offer any evidence that the confiscation of the letter was based on anything but concern for prison security. He fails to raise any genuine issue of material fact that the "Inmate Mail Procedures" regulations, allowing confiscation of personal correspondence between inmates or which communicates threats and details of criminal activities, was not reasonably related to legitimate penological interests. *See, Holloway v. Pigman,* 884 F.2d 365, 367 (8th Cir.1989).

Plaintiff's main contention is that he was deprived his due process rights because defendant failed to give him notice of the confiscation, which deprived him of the opportunity to object to the confiscation. Defendant attests that she did not issue plaintiff a confiscation notice because she did not want to tip him off as to the ongoing investigation of plaintiff and inmate prostitution activities at PCC.

■ Confiscation of any portion of an inmate's mail should be accompanied by minimal procedural safeguards. *Procunier v. Martinez,* 416 U.S. at 417–419, 94 S.Ct. at 1814; *Murphy v. Missouri Dept. of Corrections,* 814 F.2d 1252, 1257–58 (8th Cir.1987). These procedural safeguards include notice to the inmate, an opportunity to be heard, and an opportunity for appeal to a prison official who was not involved in the original censorship decision. *Procunier v. Martinez,* 416 U.S. at 418–19, 94 S.Ct. at 1814; *Murphy,* at 1258.

■ Both motions for summary judgment address the same constitutional issue: Does the Due Process Clause require pris-

on officials to notify an inmate when they confiscate his letter containing threats and plans concerning criminal conduct?

It appears that only one court has ever addressed this issue. In *Yancey v. Jenkins,* 638 F.Supp. 340 (N.D.Ill.1986), the District Court faced a situation similar to the one at hand. The Court held that mail which contains plans for criminal conduct should be exempt from the general notice requirement of *Procunier. Yancey v. Jenkins,* at 341. The Court stated:

"Giving notice of its seizure would often alert participants in criminal schemes to the existence of police scrutiny while investigations by law enforcement officials are still pending. More important, the law simply does not protect plans to commit a crime."

*Id.,* at 341.

This Court agrees with the reasoning of the Illinois district court. It is clear from the letters that criminal conduct was being planned and carried out. Plaintiff's letter was nothing more than a flagrant violation of the prohibition against inter-inmate correspondence and a means to communicate and coordinate criminal activity within the prison. An on-going investigation concerning the plaintiff's (and the other inmate correspondents') connection to prison prostitution (which was the subject of the letters) would have been compromised if plaintiff was made aware of the fact that his mail was being closely monitored.

Under the circumstances of this case, the Court does not believe that plaintiff's constitutional rights were violated. Plaintiff does not allege that he suffered any harm from being deprived of this particular piece of mail. *See, Smith v. Boyd,* 945 F.2d 1041, 1443 (8th Cir.1991); *Meis v. Gunter,* 906 F.2d 364, 367 (8th Cir.1990). The letter was clearly confiscated for security reasons and not for any personal prejudice against the plaintiff or the subject matter of the letter. "Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opin-

ions or factually inaccurate statements." *Procunier v. Martinez,* 416 U.S. at 413, 94 S.Ct. at 1811. In this situation, the defendant reasonably believed that notification to the plaintiff of the confiscation of the letter of April 21, 1989 would be a security risk. Substantial deference must be given to prison officials in matters concerning prison management. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). This Court is reluctant to substitute its judgment for that of defendant's considering the circumstances under which she decided to confiscate the letter and not notify plaintiff. *See, Wiggins v. Sargent,* 753 F.2d 663, 668 (8th Cir.1985).[2]

Since the Court concludes that defendant's actions did not violate plaintiff's rights, there is no reason to address the defendant's claim of qualified immunity.

For the foregoing reasons, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.

---

**2.** In dealing with censorship of prisoner mail, the Eighth Circuit Court of Appeals stated "[W]e should hesitate to substitute our judgment for

that of the prison officials since they normally must be allowed an area of discretion within which to deal with institutional concerns."