Tammy **KWIKKEL–ELLIOTT and William Elliott, Plaintiffs,**

v.

**AID ASSOCIATION FOR LUTHERANS, Defendant.**

No. 1:96CV00109 ERW.

United States District Court, E.D. Missouri, Southeastern Division.

Sept. 17, 1997.

Jeffrey S. Maguire, Thomasson and Gilbert, Cape Girardeau, MO, for Plaintiffs.

Mary Elizabeth Metz, John R. Phillips, William E. Corum, Blackwell and Sanders, Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

WEBBER, District Judge.

This matter is before the Court on defendant's motion for summary judgment [document # 33].

Plaintiffs Tammy Kwikkel–Elliott ("Kwikkel–Elliott") and William Elliott ("Elliott") brought this action against the defendant Aid Association for Lutherans ("AAL") pursuant to Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e, and the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. § 213. Plaintiff provided notice to the Court on September 11, 1997, that Counts I and II have been resolved by settlement, and that only plaintiff William Elliott's Count III claim of constructive discharge remains. Accordingly, the portions of defendant's motion for summary judgment that apply to plaintiff Tammy Kwikkel–Elliott will be denied as moot.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant. Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988) (moving party has the burden of clearly establishing the non-existence of any genuine issue of fact,that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

This Court is required to view the facts in a light most favorable to the non-moving party, and must give the non-moving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). The trial court may not consider the credibility of the witnesses or the weight of the evidence, White v. Pence, 961 F.2d 776, 779 (8th Cir.1992). With these principles in mind, the Court now turns to an examination of the facts.

Although plaintiff Kwikkel–Elliott's claims have been resolved, the Court finds it necessary to briefly restate the facts surrounding her claims because they bear contextual pertinence to plaintiff Elliott's claim. In December 1994, Kwikkel–Elliott was divorced from her then husband and on February 8, 1995, Elliott was divorced from his then wife. The two became engaged to be married on

February 14, 1995, and were married in April 1995. Plaintiff Kwikkel–Elliott was employed by AAL as a District Representative ("DR") from November, 1993, until her discharge in August, 1994. Kwikkel–Elliott was assigned to the Hollingsworth Agency and worked out of the office in Jackson, Missouri. From November 3, 1993, through May, 1994, Kwikkel–Elliott shared the office with two other DRs, plaintiff Elliott and Steve Grebling. On August 4, 1994, Plaintiff Kwikkel–Elliott was terminated by her supervisor, General Agent ("GA"), Jack Hollingsworth for her alleged theft of company funds.

Plaintiff Elliott was employed by AAL from 1984, through September 30, 1995. Elliott began employment with AAL as a DR in a Florida agency. In December, 1989, Elliott voluntarily transferred to a DR position in the Hollingsworth Agency. Elliott worked in the Cape Girardeau, Missouri, area from 1989, through May 31, 1994. From November, 1993, through May, 1994, Elliott worked out of the office in Jackson, Missouri, which he shared with plaintiff Kwikkel–Elliott and Steve Grebling. In May of 1994, Elliott was promoted to an Assistant General Agent ("AGA") position in the Carow Agency in St. Louis. Elliott transferred to St. Louis on June 1, 1994.

Elliott learned of AAL's decision to terminate Kwikkel–Elliott during a meeting with Jack Hollingsworth in early August, 1994. Hollingsworth told Elliott about Kwikkel–Elliott's termination because Elliott was the person who initially recruited Kwikkel–Elliott. Elliott questioned Hollingsworth's decision to terminate Kwikkel–Elliott. Later that year, without notifying AAL management, Elliott appeared at an unemployment compensation hearing on Kwikkel–Elliott's behalf. Elliott did not testify at the hearing, but his presence did create tension among AAL management.

Elliott alleges that after Kwikkel–Elliott's discharge, he experienced a series of career "set backs." First, he was told that AAL management was concerned about his appearance at Kwikkel–Elliott's unemployment compensation hearing and questioned his loyalty. Next, he was told by several members of management that if he valued his career,

he should distance himself from Kwikkel–Elliott. He was removed from his position as a AGA and placed back in the position of a DR, a position he previously held. As a DR, he states his average salary was $140,000 a year. Elliott asserts that after he failed to distance himself from Kwikkel–Elliott, he experienced a complete loss of support in the company which led to his constructive discharge. He claims he was yelled at by a supervisor, not given consideration for a sales territory he wanted, and lied to, which all made his working conditions intolerable. Elliott resigned on September 30, 1995.

Defendant denies that Elliott was constructively discharged. Defendant asserts that throughout 1994, and up to September 30, 1995, there were numerous problems and complaints regarding Elliott's job performance, judgment and insubordination. Specifically, defendant alleges the following facts. In September, 1994, two customers made complaints against Elliott. Elliott's unwillingness to accept Carow Agency management style resulted in an unsatisfactory relationship with his direct supervisor. Elliott's training of subordinates was inadequate and his use of electronic mail violated company policy. Elliott failed to notify management before appearing at an unemployment compensation hearing on behalf of plaintiff Kwikkel–Elliott. Elliott shared confidential personnel information with unauthorized persons, surreptitiously taped confidential conversations with managers, and negatively represented AAL to members. Defendant claims that as a result of Elliott's poor judgment and direct insubordination, he was demoted to a DR position with the Carow Agency effective August 1, 1995. This is a position Elliott was familiar with and one in which he was quite successful. Defendant claims that the record is clear that plaintiff was not discharged, and that he voluntarily quit a job at which he made $140,000 a year. Elliott voluntarily resigned from AAL on September 30, 1995.

 The Eighth Circuit clearly articulated the standard for constructive discharge as follows:

> To constitute a constructive discharge, the employer must deliberately create intoler-

able working conditions with the intention of forcing the employee to quit and the employee must quit. The plaintiff can satisfy the intent requirement by demonstrating that he quit as a reasonably foreseeable consequence of the employer's discriminatory actions. A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable. To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly. An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.

*Summit v. S–B Power Tool,* 121 F.3d 416, 420–21 (8th Cir.1997) (citing *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494 (8th Cir.1996)).

■ What constitutes "intolerable" was clarified in *Gartman v. Gencorp. Inc.,* 120 F.3d 127 (8th Cir.1997).

Constructive discharge occurs when an employer 'deliberately renders the employee's working conditions intolerable and thus forces the employee to quit [her] job.' The employee must show that a reasonable person in her situation would find the working conditions intolerable. In other words, 'intolerability of working conditions is judged by an objective standard, not the [employee's] subjective feelings.' Further, the employer must have intended to force the employee to quit. Constructive discharge plaintiffs may prove intent 'by showing their resignation was a reasonably foreseeable consequence of their employers' discriminatory actions.'

*Gartman,* 120 F.3d at 129–30 (citations omitted). Elliott's evidence does not establish that defendant acted with the intention of forcing him to resign or that a reasonable person would have found his conditions of employment intolerable.

■ First, his demotion from management, from an AGA position to a DR position does not show that defendant intended to force him to quit. Plaintiff was disciplined and demoted after an investigation, but he was given a job as a DR, a job which he was familiar with, successful at, and made $140,-000 a year. Plaintiff was unhappy because he did not receive the territory he wanted in Southeast Missouri, and claims that he was lied to about what territories would be available to him. Plaintiff's DR position was with the St. Louis office.

In *Tidwell,* the plaintiff's work assignment was changed and no constructive discharge was found. *Tidwell,* 93 F.3d at 496 ("Dissatisfaction with a work assignment is, as a matter of law, normally not so intolerable as to be a basis for constructive discharge.") (citing *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir.1994) ("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.")).

Plaintiff also claims that the job in the Southwest territory was given to a "rank newcomer" who was far less qualified. As the Court in *Tidwell* stated, merely because Plaintiff lost a single "opportunity to an arguably better qualified candidate, the overwhelming compulsion to quit that is necessary for constructive discharge [was] not created." *Tidwell,* 93 F.3d at 495.

Plaintiff was clearly unhappy with his employment situation with AAL in September 1995. He disagreed with AAL management and supervisors of the firing of his now wife, Tammy Kwikkel–Elliott; he disagreed with his reprimands for insubordination; and he was angry that he didn't receive the DR territory in Southeast Missouri. But even taking all plaintiff's evidence as true, the Court finds that no reasonable fact finder could conclude that defendant created an objectively intolerable working environment from which a reasonable person would be forced to quit.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED** in part and **DENIED** as moot in part, consistent with this order.