**Faris Abdul MATIYN, Plaintiff,**

v.

**COMMISSIONER DEPARTMENT OF CORRECTIONS and Walter R. Kelly, Superintendent, Attica Correctional Facility, Defendants.**

**No. CIV–87–408C.**

United States District Court, W.D. New York.

Dec. 6, 1989.

Faris Abdul Matiyn, pro se.

Robert Abrams (Allithea E. Lango, Asst. Atty. Gen., of counsel), Buffalo, N.Y., for defendants.

DECISION and ORDER

CURTIN, District Judge.

INTRODUCTION

The plaintiff, Faris Abdul Matiyn, brought this action *pro se* pursuant to 42 U.S.C. Section 1983 alleging that, while a prisoner at Attica Correctional Facility, his constitutionally protected religious freedoms were denied. Defendants, Commissioner of the New York State Department of Corrections and Walter R. Kelly, Superintendent at Attica, moved to dismiss, alleging plaintiff's failure to state a claim, and asserting qualified immunity.

FACTS

In support of defendants' Motion to Dismiss counsel has submitted a number of exhibits from which the following facts are drawn.

The Muslim communities within Attica merged to become one, at the request of the inmates (Exhibit B attached to Supplemental Affidavit of Allithea E. Lango, filed January 4, 1989) (# 18).

On February 17, 1987, plaintiff wrote to defendant Commissioner requesting that the Sunni Muslim community be provided its own religious activity space in Attica. Plaintiff's letter described serious differences between Sunni and Shi'ite Muslims

and stated that "of the 30 or so Sunni Muslims ... in need of a place to perform religious services, I was placed as a spokesmen (sic) to bring forth the problem we face at this time." (See Exhibit C to the Affidavit of Allithea E. Lango).

In a memorandum dated March 25, 1987, Imam Hassan, the Islamic Chaplain at Attica reported the following to Imam Warith Deen Umar, Islamic Affairs specialist:

> After a considerable amount of discussion and investigation, I have determined that the number of inmates requesting a separate community here at the Attica Correctional Facility is two. Also, there was a poll taken at the last Jumah, taleem, to determine how many (if any) inmates desired a separate community. The response was negative.

(See letter of March 7, 1988 from Allithea Lango with attachments) (No. 11). Enclosed with this memorandum was a letter Imam Hassan had written to a Mr. Siddique, which described in some detail the make-up of the Muslim community at Attica. In that letter, Hassan stated:

> The majority of Muslims in Attica, Masjid Ikhwanul Muslimin, are sunni. When the adhan is given for Jumah, it is called according to sunni tradition. Also, the prayers are lead according to sunni tradition. I, myself, the Islamic Chaplain here at the facility, am a sunni Muslim.
>
> There are some inmate leaders in the community (whom the inmates themselves have elected), that are shia. However, as I stated earlier, the majority of the Jamaat is sunni.[1]

Plaintiff's amended complaint alleges that defendant Kelly "set-up Attica ... under the tenants (sic) of the shi'ite muslims, because he has who he wants as an Imam for the muslim population", prevented plaintiff from attending religious services and observing his faith, and withheld food from plaintiff in an attempt to coerce plaintiff to join the shia Muslim sect.

Call-out sheets attached as Exhibit B to Lango's affidavit (No. 18) reveal plaintiff's regular attendance at Muslim worship in 1985 and 1986. In Exhibit C to the same document, plaintiff's name is absent from an April 24, 1987 list of Ramadan [2] worshippers. Such an absence comports either with plaintiff's allegation that he was denied the right to practice his religion or with defendant's allegation that plaintiff withdrew from participation in formal Muslim activities as offered, following his unsuccessful attempt to organize a separate Sunni community.

DISCUSSION

As this court stated in *Aliym v. Miles,* 679 F.Supp. 1 (W.D.N.Y.1988):

> It is well recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979) quoted in *Ross v. Coughlin,* 669 F.Supp. 1235, 1238 (S.D.N.Y.1987), and that a prisoner has the right to participate in practices which are an integral part of his religious belief. *Moorish Science Temple of America v. Smith,* 693 F.2d 987, 990 (2d Cir.1982). Such rights and protections, however, must be exercised in a manner that is "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). In evaluating inmate claims of constitutional deprivations, the court should thus balance the prisoner's asserted rights against the State's need for legitimate correctional goals. In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *O'Lone v. Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the Supreme Court

---

1. These statements appear within the context of a letter between two Muslim Imams. This fact, along with the invocation of certain sacred Muslim avowals within the text of the letter, attest to the veracity of the statements made. Generally, Muslims will not swear to an oath.

2. Ramadan: The 9th month of the Muslim year observed as a sacred month on each day of which strict fasting is practiced from dawn to sunset. Webster, *Third New International Dictionary,* 1986.

recently set out a new standard by which this balance may be struck, and identified three factors to be considered in determining whether the challenged prison regulation, or that regulation's implementation, is valid. First, the regulation must be reasonably related to the legitimate governmental interest put forward to justify it. Second, the court should ascertain whether alternative means of exercising the right remain available to the inmates. Third, the court should consider the impact on guards and other inmates, and on the allocation of prison resources generally, that accommodation of the asserted constitutional right will have.

*Aliym, supra* 679 F.Supp. at 1–2.

Applying these principles and standards to the facts set forth above, it appears that plaintiff was not denied the right to worship generally as a Sunni Muslim; rather, he was denied the right to worship in a manner individually tailored to meet his own desires, i.e., separate from Shia Muslims.

As stated in the exhibits supporting defendants' Motion to Dismiss, Attica Correctional Facility provides Muslim inmates the opportunity to practice integral aspects of their religion. Formal services are held and supervised in the Sunni tradition by a self-professed Sunni chaplain, inmates are permitted to elect their own spiritual leaders, provisions are made to accommodate important Muslim observances, and access is afforded to religious publications and other communications. Plaintiff's discontent with the presence of Shia inmate leaders and the observance of the Muslim faith in one community composed of Sunni and Shia Muslims flows not from a policy or practice of the defendants intended or designed to deprive plaintiff of the exercise of his religion, but from the realities and limitations of the prison environment itself. Accordingly, defendant's refusal to honor plaintiff's request for a separate communi-

ty does not offend the Free Exercise Clause of the First Amendment.

A consideration of the impact an accommodation of plaintiff's request to form a separate Sunni community would have on other inmates, on the allocation of prison staff, and on the security of the prison generally, reveals that legitimate penological factors and objectives outweighed plaintiff's right to practice his religion in the manner requested. Creation of a separate Sunni community would have imposed an administrative burden disproportionate to the imperfections of the existing situation as determined by plaintiff. Noting once again that Imam Hassan had determined that as of March 25, 1987, the number of inmates requesting a separate community was two, and at a poll taken at the previous Jumah,[3] that the response to creating a separate community was negative, it appears obvious that plaintiff's complaint is subjectively based in personal discontent. (See Memorandum from Imam Hassan to Imam Umar, attached to Allithea Lango's letter of March 7, 1988).

## CONCLUSION

Following plaintiff's commencement of this action, plaintiff was transferred from Attica. Because his First Amendment rights were not violated at the time he was located there, there remains no basis for relief under 42 U.S.C. § 1983, and no genuine issue of material fact to be decided. Summary judgment must therefore be entered against plaintiff.[4] For the reasons set forth above, I hereby certify that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals *in forma pauperis* is hereby denied. 28 U.S.C. § 1915(a). Further requests to proceed on appeal *in forma pauperis* should be directed, on motion to the U.S. Court of Appeals for the second Circuit, Foley Square, New York, NY, in accordance with the requirements of Fed. R.App.P. 24.

---

**3.** Jumah is the weekly Friday evening congregational worship service commanded by the Koran. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 346, 107 S.Ct. 2400, 2403, 96 L.Ed.2d 282 (1987).

**4.** Injunctive relief sought by the plaintiff is no longer at issue, due to the transfer.

The defendants' motion is granted.

SO ORDERED.