Minister Michael Malik **ALLAH**

v.

**Father Francis MENEI, Chaplain Edward Neiderheiser.**

Civ. A. No. 93–4958.

United States District Court, E.D. Pennsylvania.

Feb. 23, 1994.

Michael Malik Allah, pro se.

Denise A. Kuhn, Office of Atty. Gen., Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

KATZ, District Judge.

**AND NOW,** this 23rd day of February, 1994, upon consideration of Defendants' Renewed Motion for Summary Judgment, it is hereby **ORDERED** that the defendants' motion is **DENIED.**

## DISCUSSION

This action seeks the opportunity to practice the religion of an Islamic sect in a penal institution.

The pro se [1] plaintiff, Minister Michael Malik Allah ("Minister Allah"), is an inmate at the Pennsylvania State Correctional Institution at Graterford ("Graterford"). The defendants are Father Francis Menei ("Father Menei"), Central Administrator of Religion and Family Services for the Pennsylvania Department of Corrections, and Chaplain Edward Neiderheiser ("Chaplain Neiderheiser"), Graterford's Institutional Chaplaincy Programs Director. Compl. p. 3.

## I. BACKGROUND

On June 15, 1993, Minister Allah, as a representative of twenty-four (24) Graterford inmates, submitted a memorandum style letter (the "Memorandum") to William R. Winder, a Graterford Deputy Superintendent. Compl., Ex.Mem. Letter to William Winder (June 15, 1993). The Memorandum sought the establishment of "a religious organization under Muhammads [sic] Temple of Islam faith within this institution." *Id.* The Memorandum, which was attached to the instant Complaint, requested that the members of Muhammad's Temple of Islam (the "Temple of Islam") be afforded opportunities to practice their faith separate from, but consistent with, the opportunities offered Graterford's other religious communities, including the Nation of Islam. *Id.* Specifically, the Memorandum requested supplies [2] and "approval

---

1. On February 1, 1994, the court ordered the Clerk to arrange for the appointment of an attorney to represent the plaintiff.

2. The supplies requested in the Memorandum are: books, newspapers ("Muhammad Speaks"), secure cabinets, television, video cassette recorder, rugs, tapes (VCR & audio), tape player, podi-

for the attendance of a spiritual leader (Minister) from the outside community during Friday service and the community nights here at the institution." [3] *Id.* at 2. Minister Allah identified Minister Al Muntaquin Ali ("Minister Ali") as a leader of the Temple of Islam from the outside community. *Id.* at 4; Pl.'s letter to the court (docketed as Document 10). The Memorandum sets forth a list of the Temple of Islam's practices.[4] *Id.*

Minister Allah submitted similar written requests to Graterford Deputy Superintendent Thomas Stachelek on June 23 and June 26, 1993. Defs.' Mot. for Summ.J., Ex. E, F. In response to the Memorandum and the requests directed to Deputy Superintendent Stachelek, prison officials informed Minister Allah that prison regulations required him to meet with Chaplain Neiderheiser to review Pennsylvania Department of Correction procedures regarding recognition of faiths that are not well known. *Id.*

The operative regulation is Pennsylvania Bureau of Correction BC–ADM 819 Administrative Directive, *Religious Activities* (the "Religion Directive"). The Religion Directive's stated purpose is to "establish general guidelines for institutional religious activities" and it details prison procedure regarding inmate access to chapel facilities, accoutrements, literature, special foods and religious advisors from the outside community. The Recognition of Faiths section of the Religion Directive provides:

VIII. RECOGNITION OF FAITHS:

A. Requests for recognition of faiths that are not well known will be handled as follows:

1. Institutional official will secure information from the recognized outside faith group authority, including publications which describe the goals, beliefs and practices of the group.

2. All such information material will be forwarded to the Director of Chaplaincy Services for the Bureau who will determine the authenticity and religious needs of the group.

Defendants maintain that the plaintiff and his supporters have failed to provide the appropriate prison officials with the information required by the Recognition of Faiths section and, consequently, are not entitled to the recognition and separate privileges they seek.[5] *See* Defs.' Mot. for Summary Judgment p. 5, 8; Defs.' Renewed Mot. for Summ.J. p. 1.

On September 15, 1993, the plaintiff initiated this action by motion to proceed *in*

---

um, incense, and oil. Compl. Ex. (Memorandum) p. 5.

3. The Pennsylvania Bureau of Correction BC–ADM 819 Administrative Directive, *Religious Activities*, provides, in part:
VI. Religious Advisors:
A. If the institution contains a sufficient number of inmates of the same faith, a qualified representative of that faith from the outside community will be appointed or approved by the Superintendent and will be permitted to hold regular services in the institution.
B. Qualified representative will mean a person from the outside community who has received endorsement from their recognized faith group authority. . . .

4. The memorandum states:
PRACTICES:
1. We practice belief in the one god Allah who is (Master Fard Muhammad) and his messenger Elijah Muhammad.
2. We practice charity, fasting (during December) and daily prayer.

3. We practice Friday prayer (Jumal) and Comm. nights.
4. We practice the celebration of our founder Master Fard Muhammad's birth which is February 26, 1877.
5. We practice belief in the Quran and the sayings of the Hon. Elijah Muhammad.
6. We are not, repeat not orthodox Muslims and we do not share their interpretation of the Quran, we observe the Quran as taught by Elijah Muhammad. This is very important.
Compl., Ex. Mem. Letter to William Winder (June 15, 1993).

5. Section X of the Religion Directive provides:
This directive sets out policy and procedure. It does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. The directive should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the directives and policies of the Bureau of Correction.

*forma pauperis.*[6] On September 20, 1993, the court ordered the Graterford officials responsible for ensuring inmates' rights to undertake a review of the subject matter of the Complaint and file a report with the court within thirty (30) days. Order of September 20, 1993.

On October 22, 1993, Chaplain Neiderheiser sent a letter to Minister Ali stating that the materials submitted by the plaintiff and his other supporters were insufficient to warrant recognition. The letter further states that the "Department Directives require the following as noted in Father Menei's memo:[7]

1) Goals, objectives, beliefs of the said faith group.

2) Request for recognition by the outside authority of the said faith group.

3) Reasons why the religions [sic] needs of the said faith group cannot be satisfied by the already existing Islamic faith groups practicing at SCI Graterford."[8]

Defs.' Mot. for Summ.J. Ex. J.

On November 3, 1993 the defendants filed the report ordered by the court and an accompanying motion for summary judgment. Defs.' Mot. for Summ.J. In response, the plaintiff filed his Motion in Objection to the Defendant's Summary Judgment Motion.

The plaintiff's motion opposing summary judgment contained as an exhibit a November 10, 1993 letter from Minister Ali to Father Menei. That letter outlines the goals and beliefs of the Temple of Islam, requests recognition for the Temple of Islam and expresses why the religious needs of the plaintiff and those he represents cannot be satisfied by existing Graterford faith groups. Pl.'s Mot. in Objection to Defs.' Mot. for Summ.J., Ex. A; Defs.' Renewed Mot. for Summ.J., Ex. B. The plaintiff's objection to summary judgment also contained a twelve (12) point statement subtitled "What the Muslims Believe" and a ten (10) point statement subtitled "What the Muslims Want". Pl.'s Mot. in Objection to Def.s' Mot. for Summ.J., Ex. A2. Upon review of the defendants' report and accompanying motion for summary judgment and the objections of the plaintiff, the court ordered the defendants to prepare a supplemental report. Order of November 22, 1993. During the time allowed for preparation of the supplemental report, the plaintiff, in a paper also signed by Minister Rasul Muhammad Ay, inmate minister of the Nation of Islam, submitted to Graterford officials a list of sixteen (16) differences between the Temple of Islam and the Nation of Islam. Defs.' Mot. for an Enlargement of Time, Ex. A.[9]

**6.** On February 2, 1994, the court granted the plaintiff leave to proceed *in forma pauperis* and directed that the Complaint be filed.

**7.** Father Menei's memo is not in the present record.

**8.** The court notes that the request for information regarding whether the needs of the Temple

of Islam can be satisfied by a previously recognized Graterford faith group goes beyond the facial requirements of the Recognition of Faiths section.

**9.** The table of differences contained in the joint submission of the two inmate ministers refers to the Nation of Islam as "Farrakhan" and reads as follows:

| Farrakhan | | Temple of Islam | |
|---|---|---|---|
| a. | The messenger Elijah Muhammad is still alive | a. | The messenger Elijah Muhammad is Dead |
| b. | Louis Farrakhan is the leader of the Nation | b. | Elijah Muhammad is the leader of the Nation |
| c. | Ramadan in April (yearly) | c. | Ramadan in December (yearly) |
| d. | Pray with head in the direction of the ground | d. | Pray standing up |
| e. | Pray in Arabic | e. | Pray in English |
| f. | National newspaper is The Final Call | f. | National newspaper is Muhammad Speaks |
| g. | Uses Farrakhan's study guides | g. | Uses Elijah Muhammad's lessons (never uses Farrakhan's study guides) |
| h. | Believes Elijah Muhammad is on the mother plane (U.F.O.) | h. | Believes Elijah Muhammad is dead in the earth |
| i. | Allows Wallace Delancy Muhammad into the place of worship to speak | i. | Never allows Wallace Delancy into their place of worship |
| j. | Participates in American politics | j. | Never Participates in American politics |

The defendants' supplemental report and its accompanying Renewed Motion for Summary Judgment are the subject of this Order.[10]

## II. DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

The defendants seek judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[11] The defendants offer two alternative theories in support of their motion for summary judgment. First, they contend that the plaintiff is not entitled to relief because neither the plaintiff nor his associates have provided Graterford's staff with sufficient documentation to warrant recognition under the Recognition of Faiths section of the Religion Directive. Defs.' Renewed Mot. for Summ.J. p. 1. Second, the defendants argue that, even if the prerequisites of the Religion Directive were satisfied, the plaintiff would not be entitled to recognition and its attendant rights because the "Temple of Islam and the Nation of Islam are religiously identical." Id.

### A

■ Because this suit concerns the efficacy of restrictions on the fundamental rights of inmates, the analysis begins with the recognition of the competing interests at stake. *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989). On the one hand, it is firmly established that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. *O'Lone v. Estate Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987) ("prison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Indeed, the United States Supreme Court insists that "prisoners be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 333 (3rd Cir.1987) (citing *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984)).

■ On the other hand, lawful incarceration brings about the necessary withdrawal or limitation of many significant privileges and rights. *O'Lone*, 482 U.S. at 348, 107 S.Ct. at 2404; *Abbott*, 490 U.S. at 407, 109 S.Ct. at 1878. The considerations underlying our penal system justify this retraction of constitutional rights. *Id.* Limits on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone*, 482 U.S. at 348, 107 S.Ct. at 2404.

The plaintiff's claim alleges the abridgement of two fundamental rights protected by the Religion Clauses of the First Amendment and federal law: (1) the right to exercise one's faith free from undue state interference, and (2) the right to be free from state

| k. | Farrakhan is Reminder | k. | Elijah is Reminder |
|---|---|---|---|
| l. | Uses Books by Farrakhan | l. | Never uses Farrakhan books |
| m. | Farrakhan mentioned in our prayers | m. | Farrakhan never mentioned in their prayers |
| n. | Our Exterior Minister is Kallidah Alifah Muhammad of Masjid Allah # I2 Phila., PA 19121 | n. | Their Exterior Minister is Al Muntaquin Ali of Muhammad's Temple of Islam, P.O. Box 29683 Phila., PA 19144 |
| o. | Our Inmate Minister is Rasul Muhammad aka Russel 5X Vance AY–6446 | o. | Their Inmate Minister is Michael 5X Wilson aka Minister Malik Allah # BF–8299 |
| p. | We Greet "As Salaamu Allah" | p. | They greet "As Salaam Alaikum" |

Defs.' Mot. for an Enlargement of Time Ex. A.

10. The defendants' Renewed Motion for Summary Judgment is supported by declarations of Imam Shamsud–Din Ali, resident Imam of the Philadelphia Masjid, and defendant Chaplain Neiderheiser.

11. For a discussion of the standard of review on a motion for summary judgment see Fed.R.Civ.P. 56, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

action that favors one faith over another. Compl. p. 2; U.S. CONST. amend. I; 42 U.S.C. § 2000bb. The defendants cite security risks and costs associated with recognizing the Temple of Islam as an independent faith group as the chief penological interests at stake. Defs. Mot. for Summ.J. p. 9.[12] *See* Defs.' Renewed Mot. for Summ.J.

**B**

The defendants' first argument consists of two propositions: (1) the Recognition of Faiths section of the Religion Directive provides a valid means for resolving the tension between inmate free exercise rights and penological objectives; and, (2) the plaintiff has failed to make an adequate showing of authenticity or religious need as required by the Recognition of Faiths section.

**1**

The defendants assert that the Recognition of Faiths section's requirements strike the appropriate balance between inmate rights and penological objectives. *See* Mot. for Summ.J. p. 8 (*citing, Murphy v. Missouri Dept. of Corrections*, 814 F.2d 1252, 1257 (8th Cir.1987)); Defs.' Renewed Mot. for Summ. J., Neiderheiser Declaration ¶ 4, 7. The essence of the plaintiff's position is that, the

12. The defendants state:
   Allowing more external ministers to come into the institution increases the risk of contraband being introduced into the institution. Time and space for meeting and worshipping are already at a premium at Graterford. Therefore, even if the required documentation is eventually supplied to the [Department of Corrections] and it does not recognize Muhammad's Temple of Islam at Graterford, there is no First Amendment violation.
   Defs' Mot. for Summ.J. p. 9.

13. The court notes that the Recognition of Faiths section is ambiguous with regard to whose burden—prison officials or the petitioning party or a combination thereof—it is to provide information regarding the authenticity and religious needs of the group.

14. The purpose of the Religious Freedom Restoration Act of 1993 is: (1) to restore the compelling interest test as set forth in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and (2) to

defendants' continued claim of non-compliance with the Religion Directive and corresponding refusal of recognition has placed an unlawful hurdle in the path of those wishing to worship under the doctrines of the Temple of Islam. At issue is whether Graterford authorities may deny recognition of the plaintiff's claimed faith group by operation of the Recognition of Faiths section.[13]

Examining whether state action places an impermissible burden in the path of religious exercise requires application of the appropriate standard of review. *See e.g., Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d at 337–344 (discussing the "reasonableness" standard in assessing the validity of a prison regulation concerning inmate's abortion rights); *Thornburgh v. Abbott,* 490 U.S. at 409, 109 S.Ct. at 1879. The Religious Freedom Restoration Act of 1993, Pub.L. No. 103–141, 107 Stat. 1488, (the "Religious Freedom Act" or the "Act")[14] provides the standard of review in controversies involving prison rules that substantially burden prisoners' religious practices.[15] 42 U.S.C. § 2000bb.

The Religious Freedom Act, by its terms, does not affect the Establishment Clause.[16] The Act provides, in pertinent part:

provide a claim or defense to persons whose religious exercise is substantially burdened by government. 42 U.S.C. § 2000bb.

15. The effective date of the Act is November 16, 1993. The Act applies to all Federal and State law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after the enactment of the Act. 42 U.S.C. § 2000bb–3.

16. The Religious Freedom Act provides, in part:

SEC. 6. APPLICABILITY

(c) RELIGIOUS BELIEF UNAFFECTED.— Nothing in this Act shall be construed to authorize any government to burden any religious belief.
SEC. 7. ESTABLISHMENT CLAUSE UNAFFECTED
   Nothing in this Act shall be construed to affect, interpret, or in any was address that portion of the First Amendment prohibiting laws respecting the establishment of religion....
42 U.S.C. § 2000bb–4.

SEC. 3. FREE EXERCISE OF RELIGION PROTECTED.

(a) IN GENERAL.—Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) EXCEPTION.—Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a **compelling governmental interest;** and

(2) is the **least restrictive means** of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1 (emphasis added).

Prior to the enactment of the Religious Freedom Act, when a prison regulation impinged on an inmate's desire to worship, the regulation was valid so long as it was reasonably related to legitimate penological interests. *See e.g., O'Lone,* 482 U.S. at 349–350, 107 S.Ct. at 2404–2405 (refusal to provide inmates with religious services on Friday afternoon was reasonable and therefore constitutional given the penological objectives of security and rehabilitation); *Cruz v. Beto,* 405 U.S. 319, 328, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972); *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261.[17] The *O'Lone* "reasonableness" standard is different from and less demanding than the standard of review applicable when state action burdens the fundamental rights of the public at large. *Compare O'Lone,* 482 U.S. at 349, 107 S.Ct. at 2404 *with Sherbert v. Verner,* 374 U.S. 398, 406–407, 83 S.Ct. 1790, 1795–1796, 10 L.Ed.2d 965 (1963); *Abbott,* 490 U.S. at 407, 419, 109 S.Ct. at 1878, 1884 *with Brandenburg·v. Ohio,* 395 U.S. 444, 448–449, 89 S.Ct. 1827, 1830–1831, 23 L.Ed.2d 430 (1969). The defendants, without mention of the Act, seek application of the *O'Lone* reasonableness standard. Mot. for Summ.J. p. 8 (citing *Murphy v. Missouri Dept. of Corrections,* 814 F.2d 1252, 1257 (8th Cir.1987)).

■■■ This is a case of first impression under the Religious Freedom Act. The Act is applicable to actions involving prisoners and supersedes *O'Lone.*[18] S.Rep. No. 103–111, 103rd Cong., 1st Sess. (1993); H.R.Rep. No. 103–88, 103rd Cong., 1st Sess. (1993), U.S.Code Cong. & Admin.News 1993, p. ——. The Senate Report makes clear Congress' intent that there be one standard for examining claims of substantial government infringement on religious practice. 42 U.S.C. §§ 2000bb(a)(5), 2000bb(b)(1); S.Rep. No. 103–111. The compelling interest test set forth in *Sherbert,* 374 U.S. 398, 83 S.Ct. 1790, now controls all controversies involving substantial state burdens on religious practice. 42 U.S.C. § 2000bb–1(b); S.Rep. No. 103–111. Courts must apply this test with regard to the relevant circumstances in each case.[19] 42 U.S.C. § 2000bb–1(b); S.Rep. No. 103–111. Specifically, the Act's adoption of the compelling interest test was intended "to restore the traditional protection afforded to prisoners to observe their religions which was weakened by the decision in *O'Lone v. Estate of Shabazz." Id.; see also,* H.R.Rep.

---

**17.** The test articulated by the *Turner* Court requires consideration of four (4) factors. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Second, whether an alternative means of exercising the right remains open to prison inmates. Third, the impact the requested accommodation will have on penological interests and prison resources generally. Fourth, the availability of alternatives. *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–2262.

**18.** The Act is unambiguous and the plain meaning of the statutory language requires application of the act to actions involving prisoners. *See* 42 U.S.C. § 2000bb–1(a). The statutory definition of government encompasses prison officials. 42 U.S.C. § 2000b–2(1) ("This act applies to all Federal and State law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after the enactment of this Act."). Moreover, because the Act's purpose is remedial, the Act should be read broadly. *See Gomez v. Toledo,* 446 U.S. 635, 639, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

**19.** With regard to the prison context the Senate concluded that:

application of the Act to prisoner free exercise claims will provide a workable balancing of the legitimate interests of prison administrators with the Nation's tradition of protecting the free exercise of religion.

S.Rep. No. 111, 103rd Cong., 1st Sess. 11 (1993), U.S.Code Cong. & Admin.News 1993, p. ——.

103–88. The Act rejects the *O'Lone* reasonableness standard and embraces the compelling interest test as articulated in *Weaver v. Jago*, 675 F.2d 116 (6th Cir.1982). *Id., see also*, H.R.Rep. 103–88. In *Weaver*, the Sixth Circuit held:

> While recognizing that the courts may not substitute their judgments for those of prison administrators in matters of prison procedure and management, it nonetheless remains true that the **"asserted justification of such restrictions on religious practices based on the State's interest in maintaining order and discipline must be shown to outweigh the inmates' First Amendment rights,"** and **"only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion."**

S.Rep. No. 103–111 (citing *Weaver*, 675 F.2d at 119) (emphasis added).

■ Here, the plaintiff claims that his right to practice the religion of his choice has been substantially burdened by the application of the Religion Directive.[20] Compl. p. 2. The defendants respond with the bald allegation that the Religion Directive is a valid means of balancing the plaintiff's interest in religious practice with the penological interests at stake. *Id.;* Mot. for Summ.J. p. 8. While, under the Act, "courts must give due deference to the expertise of prison administrators in establishing necessary regulations and procedures to maintain good order, security and discipline," S.Rep. No. 111, 103rd Cong., 1st Sess. 10 (1993), U.S.Code Cong. & Admin.News 1993, p. ——; *see also, Turner*, 482 U.S. at 84, 107 S.Ct. at 2259, the defendants' mere assertion of compliance with the Religion Directive, without elaboration concerning the magnitude of the interests in-

volved,[21] is insufficient to warrant summary judgment. S.Rep. No. 103–111 (citing *Weaver*, 675 F.2d at 119). As the *Weaver* court noted:

> ... the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or safety in order to establish that its interests are of the "highest order".[22]

*Weaver*, 675 F.2d at 119; S.Rep. No. 103–111; *see also, Shabazz v. O'Lone*, 782 F.2d 416, 420 (3rd Cir.1986), *rev'd*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). The current record does not support the conclusion that the application of the Religion Directive in this case is within the bounds established by the Religious Freedom Act.

**2**

■ Further, the additional proposition that the plaintiff and his associates have not provided the information required under the Recognition of Faiths section does not entitle the defendants to summary judgment. Minister Allah and Minister Ali have provided Graterford officials with numerous documents detailing the goals, beliefs and practices of the Temple of Islam. *See, e.g.*, Pl. Objections to Defs.' Mot. for Summ.J. Ex A, A2; Defs.' Mot. for an Enlargement of Time, Ex. A; Neiderheiser Declaration ¶¶ 4–6. The defendants have not established the plaintiff's failure to comply with the requirements of the Recognition of Faiths section.[23]

**C**

Defendants also argue that plaintiff is not entitled to the relief sought because his religious needs are met by the Nation of Islam

---

20. For a discussion of degree of burden necessary to trigger constitutional protection, see *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 304, 105 S.Ct. 1953, 1963, 85 L.Ed.2d 278 (1985).

21. *See* Neiderheiser Declaration ¶¶ 7–8 (discussing generally the current practice for accommodating different faith groups and the limited resources available for such accommodation).

22. "Ensuring the safety and orderliness of penological institutions ... have been recognized as governmental interests of the highest order." H.R.Rep. 103–88.

23. The court notes that the defendants' alternate argument, that the Nation of Islam and the Temple of Islam are identical, appears inconsistent with their position that Graterford officials do not possess enough information to assess the "legitimacy" of the plaintiff's religion.

services currently provided.[24] Defs.' Renewed Mot. for Summ.J. p. 1. The defendants state that an inmate faith group's petition for separate but equivalent facilities may be refused as redundant if **prison officials** determine that the petitioning faith group is essentially identical to a currently recognized faith group.[25] Defs.' Renewed Mot. for Summ.J. p. 1; Neiderheiser Decl. ¶ 8. Here, the defendants assert that the Temple of Islam and the Nation of Islam are religiously identical and, "[t]here is, therefore, no religious need to provide Muhammad's Temple of Islam with meeting time and space, an external advisor, an inmate advisor, etc., separate and apart from that already provided to the Nation of Islam." [26] Defs.' Renewed Mot. for Summ.J. p. 1; Shamsud–Din Ali Declaration ¶ 2. The defendants' position leaves the plaintiff and other similarly situated members of his faith with one of two choices: either choose to have an outside coordinator and worship services controlled by the Nation of Islam or choose to have no outside coordinator and no group worship services.

■ The defendants' position does not entitle them to summary judgment. There is a "long established policy of not picking and choosing among religious beliefs." *Welsh v. United States*, 398 U.S. 333, 338, 90 S.Ct. 1792, 1795, 26 L.Ed.2d 308 (1970); *United States v. Seeger*, 380 U.S. 163, 175, 85 S.Ct. 850, 858–859, 13 L.Ed.2d 733 (1965); *see also Allegheny County v. Greater Pittsburgh ACLU*, 492 U.S. 573, 593, 109 S.Ct. 3086, 3101, 106 L.Ed.2d 472 (1989) (government may not convey a message that a particular religious belief is favored or preferred). Moreover, the Establishment Clause [27] protects religious practices as well as beliefs. *Allegheny County*, 492 U.S. at 590, 109 S.Ct. at 3099. The defendants have not challenged that the plaintiff's beliefs are sincerely held on the present record. *See* Defs.' Sum.J. Mot. p. 9 n. 7.[28]

24. To bolster their position, the defendants outlined the present state of religious affairs at Graterford:

> We provide for only one Jewish congregation. There is [sic] only a total of 20 Jewish inmates. We do not have an external coordinator come into the institution for each sect. While there are some substantial differences in their practices, Orthodox, Conservative, Reform and Reconstructionist Jews all share together in Sabbath services, prayer and study, and Holy Day celebrations. There services are essentially preformed in a Reform format, *i.e.*, they are conducted primarily in English using primarily an English prayer book.
>
> We also provide only one Hispanic language arrangement even though Hispanics are traditionally divided between Catholic and Pentecostal expressions. That is a significant difference, yet the community gathers together for services in Spanish.
>
> Perhaps most illustrative is the Protestant community at Graterford. While we do make certain provisions for what are considered non-orthodox protestant expressions, *i.e.*, for Jehovah's Witness, Christian Science, etc., we do not have distinct and separate arrangements for mainstream denominations. We do not have separate services for Lutherans, Methodists, Presbyterians, Baptists, AME, etc. And certainly no provisions are made for differences within such denominations, *e.g.* Southern Baptists, Free Baptists, American Baptists. Such denominations have differences of acknowledged leadership, different structures of polity, and different practices for

worship, but, because of their fundamentally similar belief structures, they gather together. Defs.' Renewed Mot. for Sum.J., Neiderheiser Decl., ¶ 7.

25. The sectarian differences between various Moslem, Christian and Jewish denominations have constitutional importance. *Allegheny County v. Greater Pittsburgh ACLU*, 492 U.S. 573, 589, 109 S.Ct. 3086, 3098, 106 L.Ed.2d 472 (1989).

26. In support of this position the defendants cite *Matiyn v. Commissioner, Dept. of Corrections*, 726 F.Supp. 42 (W.D.N.Y.1989). *Matiyn* was decided before the passage of the Religious Freedom Act. In *Matiyn*, prison officials denied the plaintiff's request that Sunni Muslims be provided with facilities for religious services separate from Shia Muslims. The *Matiyn* court found the Sunni and Shia religions distinct but granted summary judgment for the defendant because important penological interests outweighed the Plaintiff's rights under the Free Exercise Clause of the Constitution. *Matiyn* 726 F.Supp. at 44. The *Matiyn* court did not discuss the Establishment Clause.

27. U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, ...").

28. *Cf. In re Grady*, 61 Cal.2d 887, 39 Cal.Rptr. 912, 394 P.2d 728 (1964). The *Grady* court determined that petitioner, a self-styled "peyote preacher," was not an honest and bona fide user of peyote for religious purposes. *Grady*, 61 Cal.2d at 889, 39 Cal.Rptr. 912, 394 P.2d 728.

■ There is a constitutional difficulty in the state's deciding whether two different religious beliefs are essentially the same. *Allegheny County*, 492 U.S. at 593, 109 S.Ct. at 3100. Further, the state may not "promote one religion or religious theory against another or even against the militant opposite." *Id.* At the very least, the Establishment Clause prohibits government from appearing to take a position on questions of religious belief.[29] *Id.* at 594, 109 S.Ct. at 3101.

■ Government may not favor one legitimate faith group over another or question the rationale of honestly held beliefs. *Wallace v. Jaffree*, 472 U.S. 38, 53, 105 S.Ct. 2479, 2488, 86 L.Ed.2d 29 (1985) (citing *Everson v. Board of Education*, 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947));[30] *United States v. Ballard*, 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944).

The defendants' position appears to favor the Nation of Islam over the Temple of Islam. The Nation of Islam is a recognized faith group within Graterford. The defendants have thus far barred recognition of the Temple of Islam, a faith group that **the plaintiff believes** is substantially different from the Nation of Islam. The defendants seem to assert that prison officials may judge whether the plaintiff's honestly believed contentions of difference between his faith and the Nation of Islam are correct. The government has a constitutional obstacle to making any such judgments. *Ballard*, 322 U.S. 78, 86–87, 64 S.Ct. 882, 886–887, 88 L.Ed. 1148 (1944); *United States v. Seeger*, 380 U.S. 163, 184–85, 85 S.Ct. 850, 863–64, 13 L.Ed.2d 733 (1965); *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971); *Allegheny County v.*

*Greater Pittsburgh ACLU*, 492 U.S. 573, 589–94, 109 S.Ct. 3086, 3098–3101, 106 L.Ed.2d 472 (1989).

The appropriate balance between religious freedom and orderly prisons cannot be struck on the present record.

---

**29.** The defendants assert that they already provide approximately 80 separate worship services sessions per week. Defs.' Renewed Mot. for Summ.J., Neiderheiser Decl. ¶ 8. Defendant Neiderheiser declared that "[t]his puts a great strain on our time (mine, the volunteers, the corrections staff, etc.) and space resources. Given the circumstances, it is not appropriate nor is it possible to accommodate every splinter group that may have different leadership or ritual practices." *Id.*

The court recognizes that not "every religious sect or group within a prison—however few in number—must have identical facilities or personnel." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2.

**30.** The *Everson* Court held:

The "establishment of religion" clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass law which aid one religion, aid all religions, or prefer one religion over another.

*Everson*, 330 U.S. at 15, 67 S.Ct. at 511.