Stone v. Hamel                          CV-91-385-B    04/08/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Lawrence Stone

        v.                            Civil No. 91-385-B

Robert Hamel, et al.


**O R D E R**


In my June 1, 1993 Order, I directed the State to supplement the record and file a memorandum responding to certain issues raised by its motion to dismiss.  I have now reviewed the materials the State submitted in response to that Order, as well as petitioner's supplemental memorandum and additional material. Accordingly, I turn to the merits of the State's arguments.[1]


**I.  The August 24, 1989 Parole Board Decision**

The State contends that petitioner cannot successfully challenge the Parole Board's August 24, 1989 decision rescinding

---

[1]I determine that an evidentiary hearing is not necessary to resolve the issues raised by petitioner's habeas corpus petition because the parties have not demonstrated that a genuine dispute exists as to any of the material facts upon which this order is based.  See Porcaro v. United States, 832 F.2d 208, 212 (1st Cir. 1987).

his parole because the Board's June 2, 1989 conditional parole order did not give petitioner a constitutionally protected liberty interest in parole. I agree.

"Protected liberty interests 'may arise from two sources -- the Due Process Clause itself and the laws of the States.'" Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1988) (quoting Hewitt v. Helms, 459 U.S. 460, 466 (1983)). In this case, petitioner alleges that his liberty interest is derived from state law. State laws or regulations will create protectable liberty interests when they place "substantive limitations on official discretion." Id. at 462 (quoting Olim v. Wakinekona, 461 U.S. 238, 249 (1983). This test has two components: first, the law or regulation must establish "substantive predicates" to guide the state's decisionmakers; and second, it must use mandatory language to ensure that if the substantive predicates are present, a prescribed result will necessarily follow. Kentucky Dept. of Corrections, 490 U.S. at 462-63. Petitioner's liberty interest claim fails under both parts of the above-described test. Both the parole statute and the Parole Board's regulations plainly provide that the Board has discretion in deciding whether to grant or deny parole to an eligible inmate. N.H. Rev. Stat. Ann. 651-A:6 (providing that

2

the Board "may" grant parole to eligible inmates); Rules of the Adult Board of Parole, Par. 201.01 ("parole is a privilege, not a right"). Moreover, while the Board has established criteria that it will consider in making parole decisions, its regulations allow the Board to deny parole for any reason "the Board deems pertinent to the case under consideration." Rules of the Adult Parole Board, Par. 302.01(e). Finally, no statute or regulation purports to restrict the Board's authority to rescind a parole decision prior to an inmate's release on parole. Under these circumstances, a conditionally paroled inmate does not have a constitutionally protected liberty interest in parole. Jago v. Van Curen, 454 U.S. 14, 19-22 (1981); cf. Lanier v. Fair, 876 F.2d 243, 252 (1st Cir. 1989) (Massachusetts Parole Board regulations create a liberty interest in a reserve parole date).

Petitioner nevertheless contends that the Parole Board's June 2, 1984 conditional parole order conferred a protected liberty interest on him because it granted him parole subject only to certain specific conditions. This argument was rejected by the Supreme Court in Jago, where the Court determined that an inmate lacked a protected liberty interest in parole even though the Parole Board had approved his request for parole. In reaching this conclusion, the Court specifically rejected the

3

inmate's argument that a protectable liberty interest can arise from "mutually explicit understandings" between the state and an inmate. Jago, 454 U.S. at 19-20; but cf. Rodi v. Ventetuolo, 941 F.2d 22, 26 (1st Cir. 1991) (protected liberty interest may be created through less formal pronouncements than laws or regulations, such as signed contractual agreements).

Because petitioner has no protected liberty interest in parole, his challenge to the Board's August 24, 1989 Order necessarily fails to state a claim for relief.

## II. The September 6, 1989 Disciplinary Board Decision

### A. Inmates have a liberty interest in retaining accrued good time credit.

The State argues that petitioner's loss of 50 days of good time credit following the September 6, 1989 Disciplinary Board decision did not implicate a constitutionally protected liberty interest. I disagree.

N.H. Rev. Stat. Ann. 651-A:22 provides that the Commissioner has discretion to award good time credit to eligible inmates. However, once good time credit has been awarded, it cannot be taken away unless the prisoner escapes or engages in a "serious act of misconduct or insubordination, or persistent refusal to

4

conform to prison regulations during his confinement. . . ." N.H. Rev. Stat. Ann. 651-A:22. This statute is sufficient to give an inmate a protected liberty interest in accrued good time.

B. Due Process

Petitioner claims that the State deprived him of his right to due process when the Prison Disciplinary Board found him guilty of a major disciplinary violation. Specifically, he claims that: (1) the Disciplinary Board denied him the right to confront and cross-examine the lab technician who performed the drug test on which the Board's finding was based; (2) the Board prevented him from challenging the chain of custody for the urine sample that was used in the drug test; and (3) a single positive drug test is insufficient evidence to support the Disciplinary Board's decision. I address these arguments seriatim.

1. **The Lab Technician**

The State seeks to justify its refusal to require the presence of the lab technician at the disciplinary hearing by invoking its rule that "the Board is not required to hear testimony or accept evidence which is repetitious, redundant,

5

immaterial, or irrelevant."[2] N.H. Dept. of Corrections Policy and Procedure Directive No. 2.525.IV(f)(4). According to the chairperson of the Disciplinary Board at the time of the September 6, 1989 hearing, petitioner would not have been allowed to call the lab technician unless he could establish that the technician could have offered relevant testimony on something besides the contents of the drug test report. The State has a legitimate interest in ensuring that witnesses such as lab technicians are not routinely called at disciplinary hearings unless they can supply non-cumulative, relevant information. Since I have been presented with no evidence suggesting that the reason proffered by the State is mere pretext, I conclude that the State did not deprive petitioner of his due process rights by not granting his request to produce the lab technician. See Ponte v. Real, 471 U.S. 491, 497-98 (1985) (failure to call a witness at a disciplinary hearing will not deprive an inmate of due process if the reasons for not calling the witness "are logically related to preventing undue hazards to 'institutional

_____

[2]The State also suggests that petitioner may not have made his request for a lab technician at the hearing. I reject this argument because the record contains an inmate request slip signed by petitioner requesting that the lab technician called as a witness.

safety or correctional goals' . . ."); <u>Smith v. Massachusetts Dept. of Corrections</u>, 936 F.2d 1390, 1399-1400 (1st Cir. 1991); <u>Spence v. Farrer</u>, 807 F.2d 753, 756 (8th Cir. 1986).

### 2. **Chain of Custody**

Although petitioner claims that the Disciplinary Board wrongly denied his request to produce chain of custody records for his urine test, the records submitted by the State establish that petitioner did not request the records until after the hearing. Because petitioner did not make a timely request for the records, the State was under no obligation to produce them.

### 3. **Sufficiency of the Evidence**

Petitioner argues that the Disciplinary Board's decision did not comport with due process because it was based solely on the results of an Enzyme Multiple Immunoassay Test ("EMIT"). I disagree. The Supreme Court has established that the requirements of due process are satisfied at a disciplinary hearing so long as there is "any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Superintendent, Mass. Correctional Inst. v. Hill</u>, 472 U.S. 445, 455-56 (1985). This very low standard of proof is satisfied by a positive EMIT test. <u>Higgs v. Bland</u>, 888 F.2d 443, 449 (6th Cir.

7

1983).

In summary, although the September 6, 1989 Disciplinary Board hearing did implicate petitioner's protected liberty interest in accrued good time credits, the procedures followed by the Disciplinary Board satisfied the requirements of the Due Process clause.

III.  **The Hair Length Regulation**

The Prison's rules for the minimum security unit ("MSU") require that "hair shall not extend below the collar or ear lobe."  N.H. Dept. of Corrections, <u>MSU Resident Handbook</u> 3. Petitioner wears his hair in a ponytail and is unwilling to cut his hair in order to comply with the Warden's recommendation that the petitioner be transferred to the MSU or the halfway house before his release on parole.  In its December 15, 1989 rehearing, the Parole Board followed the Warden's recommendation and declined to release petitioner on parole because he had not yet been transferred to MSU.

To the extent that petitioner claims the Parole Board's December 15, 1989 decision denied him due process of law, this argument has no merit because plaintiff lacks a protectable liberty interest in parole.  <u>See</u> Section I, <u>supra</u>.  <u>See also</u>,

8

<u>Greenholtz v. Inmates of Neb. Penal and Correctional Inst.</u>, 442 U.S. 1, 7 (1979). In any event, the rule petitioner challenges is immune from attack because it is "reasonably related to legitimate penological interests." <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). The materials submitted by the State establish that the rule's primary purpose is to make it more difficult for an escaped inmate to quickly alter his appearance by cutting his hair. This is a legitimate penological interest. <u>Iron Eyes v. Henry</u>, 907 F.2d 810, 814 (8th Cir. 1990). Moreover, the regulation is reasonably related to the security interest the rule is designed to further. <u>See</u> <u>Pollock v. Marshall</u>, 845 F.2d 656, 658-59 (6th Cir.), <u>cert. denied</u>, 488 U.S. 497 (1988) (using <u>Turner's</u> four-part test and concluding that a hair length regulation is reasonably related to the prison's legitimate interest in preserving prison security).[3] Thus, petitioner

_____

[3]I note that, to the extent that <u>Iron Eyes</u> and <u>Pollock</u> both apply the <u>Turner</u> test to determine the validity of a hair regulation which impacted upon plaintiffs' religious freedom, these cases may have been superseded by the Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488, 42 U.S.C.A. § 2000bb (West Supp. 1994) (requiring that laws which impinge upon an individual's constitutional right to freedom of religion be the least restrictive means of furthering a compelling governmental interest). <u>See</u> <u>Allah v. Menei</u>, 1994 WL 58360, *4-6 (E.D. Pa., Feb. 23, 1994). <u>Iron Eyes</u> and <u>Pollock's</u> use of the <u>Turner</u> test remain applicable here because Stone proffers no religious reason for wearing his hair in a ponytail.

9

cannot successfully challenge the hair length rule as an unconstitutional interference with his effort to obtain parole.

## CONCLUSION

For the above-stated reasons, petition's habeas corpus petition is dismissed.[4]

SO ORDERED.

 

 

 

Paul Barbadoro
United States District Judge

April 8, 1994

cc: James Clark Dawe, Esq.
     Geoffrey Ranson, Esq.

---

[4]Petitioner's other arguments are so inconsequential that they do not require discussion. It is enough to say that under no set of circumstances could they form the basis for a successful habeas corpus petition.